Lanny WILLIAMS, Individually, and as Co–Executor of the Estate of T.H. Williams, Respondent/Appellee,

v.

Alice WILLIAMS, Individually, and as Co–Executrix of the Estate of T.H. Williams, Petitioner/Appellant.

Court of Appeals of Tennessee, Western Section, at Jackson.

July 20, 1992.

Certiorari Denied by Supreme Court Nov. 30, 1992.

Thomas E. Harwood, Trenton, for respondent, appellee.

Sam J. Watridge, Humboldt, for petitioner/appellant.

HIGHERS, Judge.

On May 24, 1990, the petitioner, Alice Williams, filed a petition in the Probate Court of Crockett County seeking to dissent from her deceased husband's will and to take an elective share as his surviving spouse under T.C.A. § 31–4–102. Lanny Williams, the decedent's son, filed an answer to the petitioner alleging that the petitioner was prohibited from seeking an elective share. The cause was heard on April 1, 1991, and the trial court, sitting without a jury, held in favor of the respondent, Lanny Williams, finding that Mrs. Williams was not a surviving spouse under T.C.A. § 31–4–102, and therefore she was not entitled to a surviving spouse's elective share of the estate of the decedent, her husband, T.H. Williams. The trial court also found that the petitioner was bound by the terms of an ante-nuptial agreement purportedly executed by the petitioner prior to her marriage to the decedent and therefore was only entitled to receive $5,000.00 in cash, a life estate in the main dwelling home of the parties and the three (3) acres surrounding the home which could be divested upon her remarriage, and any automobile owned by T.H. Williams at the time of his death. The court held that since the petitioner had heretofore drawn $8,274.66 in cash from the estate she would be required to reimburse the estate the sum of $3,274.66. The trial court also found that the wife, by filing her petition for an elective share, had violated an *in terrorem* clause contained in T.H. Williams' will and therefore was not entitled to take anything under the will. The wife has appealed.

Alice and T.H. Williams were married October 31, 1971, and remained married for eighteen years until his death on November 7, 1989. Mrs. Williams admits having signed an ante-nuptial contract with T.H. Williams three or four days prior to their marriage. She testified, however, that she did not remember the exact terms of this ante-nuptial contract and did not possess a copy of the contract. The respondent was also unable to produce a signed copy of the ante-nuptial contract but did offer to the court an unsigned copy of the document found in the files of J.B. Avery, Jr., a deceased attorney, whom the petitioner admitted drafted the ante-nuptial contract she signed. The unsigned copy of the contract proffered by the respondent provided that in the event the petitioner was living at the time of the husband's death, she would be entitled to the sum of $5,000.00 in cash to be paid by the estate of the husband. The contract further provided that the husband may pay the $5,000.00 during his lifetime, and if such payment is made, the estate shall be relieved from making the payment. Also under the contract, if the wife was living at the time of the husband's death, she would be entitled to the main dwelling home of the parties and the three (3) surrounding acres during the term of her life or until her remarriage, whichever occurred first. Additionally, the contract provided that the wife could have any automobile which the husband owned at the time of his death.

The unsigned copy of the ante-nuptial contract proffered by the respondent also provides that the petitioner agreed to accept the sum of $5,000.00 and the other property enumerated in the ante-nuptial agreement in full settlement of all her rights in the estate of the husband, including homestead, dower, year's support, exempt property, and any other rights in his estate arising by virtue of their marriage. The contract also states that if, after the marriage, the parties find it impossible or impracticable to live together as man and wife, "the wife shall have no claim of any kind against the husband on that account in excess of $2,000.00, including but not limited to alimony, support, maintenance, or any other right arising by virtue of their marriage." The contract finally provides that each of the parties received independent legal advice prior to the execution of the agreement.

The wife testified that prior to signing the ante-nuptial agreement, she had never been advised by her husband or anyone else as to the extent of his holdings. The respondent put on no evidence to contradict this testimony by the wife except to show that the wife had lived in the same community with the husband most of her life and therefore should have been aware of the extent of his holdings.

In August of 1984, the decedent purchased a forty-six acre farm in Madison County and subsequently deeded a one-half undivided interest in this farm to the petitioner. The trial court found that this conveyance was a gift by the decedent to his wife and was not offered in settlement of the $5,000.00 she was to receive under the terms of the ante-nuptial agreement.

On November 1, 1989, the decedent, while hospitalized for cancer, dictated a will to his son, the respondent. This will was then executed by the decedent and two witnesses. The will named the respondent and the petitioner as co-executors of the decedent's estate. Under the will, the wife was to receive essentially the same amount of property as under the ante-nuptial agreement with the respondent receiving the remainder and residue of the decedent's estate. The will also contained a forfeiture or *in terrorem* clause which provided that if the parties attempted to contradict any part of the will, they would lose 100% of any benefits enuring to them under the will.

T.H. Williams died on November 7, 1989. On November 22, 1989, the petitioner and respondent jointly filed a petition in the Probate Court of Crockett County seeking to have the November 1, 1989, will of T.H. Williams admitted to probate. On November 22, 1989, the Probate Court entered an order naming both Lanny and Alice Williams as co-administrators, CTA, and admitting the will to probate.

On May 24, 1990, the petitioner filed her petition for an elective share in the Probate Court. Lanny Williams, individually, and as co-executor of T.H. Williams' estate, filed an answer and counter-complaint which claimed that Alice Williams did not have a right to claim an elective share of T.H. Williams'

estate since she was not a surviving spouse as contemplated by T.C.A. § 31-4-102 because of the ante-nuptial agreement allegedly entered into between her and T.H. Williams prior to their marriage. The respondent also contended that the petitioner was not entitled to receive anything under the will because her petition for an elective share violated the *in terrorem* clause contained in the will.

The trial court found that the unsigned ante-nuptial contract proffered by the respondent was the same contract entered into between T.H. and Alice Williams prior to their marriage and that this ante-nuptial contract was valid under the laws of this state. The trial court further found that because the ante-nuptial contract was valid, the petitioner was not entitled to an elective share under T.C.A. § 31-4-102. Finally, the trial court found that Alice Williams' petition for an elective share was a "contest" to the will which negated any interest she may have received from T.H. Williams under the will because of the *in terrorem* clause. The court held that since Alice Williams had heretofore drawn $8,274.66 in cash from T.H. Williams' estate, she should be required to reimburse the estate the sum of $3,274.66, the difference between the amount she has drawn from the estate and the $5,000.00 she was entitled to under the ante-nuptial agreement.

The petitioner argues on appeal that the trial court erred in admitting into evidence as a true copy, under the then-effective lost documents statutes, the unsigned ante-nuptial agreement found in the files of J.B. Avery, Jr., the deceased attorney who prepared the agreement for T.H. Williams. We find that it is not necessary for us to address the issue of whether the trial court erred in admitting this document into evidence since we find that, the ante-nuptial agreement proffered by the respondent, even if properly admitted, is not binding on the petitioner. Accordingly, the petitioner's argument with regard to the trial court's decision to admit this document into evidence is pretermitted.

T.C.A. § 36-3-501 specifically states that ante-nuptial agreements are enforceable and binding upon any court having jurisdiction

over the spouses "if such agreement is determined in the discretion of such court to have been entered into by such spouses freely, knowledgeably and in good faith and without exertion of duress or undue influence upon either spouse."

Prior to the enactment of this statute in 1980, the Tennessee courts had recognized the enforceability of ante-nuptial agreements. In *Baker v. Baker*, 24 Tenn.App. 220, 142 S.W.2d 737 (1940), however, the court stated that:

> [I]f the provision for the prospective wife is, in the light of surrounding circumstances, wholly disproportionate to the means of her future husband and to what she would receive under the law, the burden rests on those claiming the validity of the contract to show that there was a full disclosure of the nature, extent and value of the intended husband's property or that she had full knowledge thereof without such disclosure, and that she, with this knowledge, voluntarily entered into the ante-nuptial settlement.

*Id.* 142 S.W.2d at 745. The 1980 statute does not specifically recognize the rule that full disclosure of the nature, extent and value of the property spouse's estate is required when the contract provides for a disproportionate distribution of that estate. In *Kahn v. Kahn*, 756 S.W.2d 685 (Tenn.1988), however, the Tennessee Supreme Court held that the disclosure requirement was incorporated into the statute's mandate that in order for an ante-nuptial agreement to be enforceable, both spouses must enter the agreement "freely, knowledgeably and in good faith and without exertion of duress or undue influence...." The court reasoned that the disclosure requirement is consistent with the statute because "numerous factual scenarios could occur in which the failure to make a full disclosure of assets, liabilities and values would breach the statutory requirement that the contract was entered into freely, knowledgeably and in good faith." *Kahn v. Kahn, supra* at 694.

The *Kahn* court's interpretation of the statute as requiring full disclosure where one spouse is to receive a disproportionate share of the other spouse's estate under the agreement is in accord with the weight of authority in other states which have considered the validity of ante-nuptial agreements. Most of these courts reason that disclosures are required in this situation because the parties to ante-nuptial agreements do not deal with each other at arms length as do the parties to an ordinary commercial transaction. Instead, the intent to marry gives rise to a confidential relationship that imposes on each the duty to make a full and fair disclosure of the nature, extent and value of the property that he or she presently holds, so that the other party may make an intelligent decision as to what would be gained or lost by entering into the agreement. *See,* Annotation: *Failure To Disclose Extent Or Value Of Property Owned As Ground For Avoiding Premarital Contract.* 3 ALR 5th 394, 1992.

■ After carefully reviewing the record in the instant case, we find that T.H. Williams had the duty to disclose to Alice Williams the full nature and extent of his holdings in order for the ante-nuptial agreement entered between them to be valid and binding on Alice Williams. The record indicates that T.H. Williams' estate was appraised at $587,580.00 after his death. There is no evidence in the record from which we could conclude that this estate was not of a similar amount at the time of T.H. and Alice Williams' marriage. Under the ante-nuptial agreement, proffered by the respondent, Alice Williams was to receive a life estate in the home and three (3) acres, a car and a payment of $5,000.00. Unquestionably, under the ante-nuptial agreement, Alice Williams was to receive a disproportionately small share of her husband's estate when compared with the value of the estate she would receive if she were allowed to take a surviving spouse's elective share of the estate under T.C.A. § 31–4–102. Thus, we find that in order for the ante-nuptial agreement to be valid and binding it was incumbent that Alice Williams have full knowledge of the nature and extent of T.H. Williams' estate at the time it was executed.

■ Petitioner testified at trial that at the time she met T.H. Williams she knew he owned land but she did not know how much. She also testified that she had no knowledge

of the status of his estate or how much money he had. This testimony is unrefuted in the record. Accordingly, we find that the preponderance of the evidence supports a finding that T.H. Williams made no disclosure to Alice Williams as to the full extent of his estate prior to executing the ante-nuptial agreement.

The respondent argues that even if T.H. Williams did not disclose to petitioner the full extent of his estate prior to their execution of their ante-nuptial agreement, the petitioner should be held to have possessed such knowledge due to the fact that she lived in the same community as T.H. Williams for her entire life. We agree with the respondent's assertion that had the petitioner obtained the requisite knowledge from an independent source prior to executing the ante-nuptial agreement, T.H. Williams would have been relieved of the duty to disclose the extent of his estate. We do not believe, however, that in the instant case the respondent has proved that Alice Williams had obtained such knowledge from an independent source. The only proof in the record is that the petitioner did indeed live in the same community as T.H. Williams for her entire life prior to their marriage. The record reflects that while the petitioner may have been aware of some of the enterprises in which T.H. Williams had been engaged prior to their marriage, it does not show that she had the requisite knowledge of the extent of his holdings at the time of the marriage. Therefore, the respondent has not shown that the decedent was relieved of the duty to disclose the extent of his estate to the petitioner prior to entering the ante-nuptial agreement.

The respondent also argues that the actual terms of the ante-nuptial agreement show that the petitioner entered into the contract freely, knowledgeably and in good faith without exertion of duress or undue influence by T.H. Williams. In support of this, the respondent points to the language in the contract which states:

Each of the parties agree with the other that each of them has had independent legal advice prior to execution of this agreement and that each of them has been advised of his rights in the property of the other after their marriage if no agreement were made between them, and each of the parties fully acknowledges that he understands what would be his rights in the property of the other if there were no agreement, and that this agreement is made with full knowledge of such rights, after having been independently advised concerning same.

While this provision does state that the petitioner was informed of her rights in the property of T.H. Williams prior to entering into the contract, this provision does not state that she was informed of the extent of his holdings prior to entering into the contract.

Since an ante-nuptial contract places the spouses in a confidential relationship with each other, we believe that the provisions of an ante-nuptial contract must be interpreted in favor of the unpropertied spouse, in this case, the petitioner. Interpreting this contract in the light most favorable to the petitioner, we find that this provision is ambiguous on the question of whether the petitioner was informed of the extent of T.H. Williams' property prior to entering into the contract. Therefore, it was permissible for the trial court to entertain extrinsic evidence on this issue. The only extrinsic evidence presented on this issue is the testimony of the petitioner wherein she stated that she had not been fully informed of the extent of T.H. Williams' holdings prior to entering the ante-nuptial agreement. Accordingly, the above-quoted recital in the ante-nuptial agreement does not establish that T.H. Williams made a full disclosure as to the extent of his property prior to the execution of the ante-nuptial agreement. Therefore, we find that the trial court erred in holding that the ante-nuptial agreement proffered by the respondent was binding and effective against the petitioner.

Since we have found that the ante-nuptial agreement was ineffective, we further find that Alice Williams was a surviving spouse under T.C.A. § 31–4–101. The respondent argues, however, that even if the petitioner is a surviving spouse within the meaning of this statute, the *in terrorem*

clause in the decedent's will prohibits her from contesting the will and therefore from seeking her elective share of the decedent's estate. The *in terrorem* provision at issue provides:

> If either of the two parties mentioned in this my last will and testament do so by any means try to contradict any or all of these, my last wishes, they will lose (100%) One–Hundred Percent of any and all benefits that I have willed to either of them.

Upon its face, this provision of the will provides that if either Alice Williams or Lanny Williams attempts to contradict any of the bequests under the will they will lose the benefits enuring to them under the will. Alice Williams' petition for an elective share asserts an interest in the estate of her deceased's husband arising statutorily, not under the will. Therefore, we hold that since this provision seeks to limit only what one of the beneficiaries of the will may receive under the will itself, it has no effect on what the petitioner may elect to receive statutorily outside of the will. As we decide this question solely on the language of the provision in the will itself, we need not address the more difficult question of whether such a provision would be against public policy if it expressly attempted to prohibit the petitioner from seeking her statutory right to an elective share in her deceased husband's estate.

In sum, we hold that the ante-nuptial agreement proffered by the respondent, even if properly admitted into evidence by the trial court as a true copy of the agreement executed by T.H. and Alice Williams, is invalid and ineffective. Furthermore, we hold that the petitioner is not barred by the *in terrorem* clause in T.H. Williams' will from seeking and obtaining her statutorily elective share provided for by T.C.A. § 31–4–101. Accordingly, we hold that the trial court erred in not allowing the petitioner to opt for an elective share in her husband's estate as a surviving spouse, as set out by the statute. The case is remanded to the trial court for proceedings necessary to determine exactly how much the petitioner's elective share of the decedent's estate is and for entry of an order awarding that amount to the petitioner.

The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion. Costs are taxed to the respondent.

CRAWFORD and FARMER, JJ., concur.