IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

December 17, 1998

Cecil Crowson, Jr.
Appellate Court
Clerk

IN THE MATTER OF:      )    KNOX CHANCERY
THE ESTATE OF LEN C. BELEW,   )    C.A. NO. 03A01-9807-CH-00206
DECEASED;         )
         )
         )
         )
SANDRA BELEW,      )
         )
   Petitioner-Appellant    )
         )
         )    HON. SHARON BELL
   vs.       )    CHANCELLOR
         )
         )
         )
DAVID HUGHES BELEW,    )
Personal Representative,   )
         )
   Defendant-Appellee    )    AFFIRMED AND REMANDED


J. MIKEL DIXON, Knoxville, for Appellant.


ANNA F. HINDS, JAMES P. MYNATT, JR., Stone & Hinds, P.C., Knoxville, for Appellee.


O P I N I O N

McMurray, J.


This case involves a question of the validity of an antenuptial agreement. After the decedent Len Belew's death, his widow, Sandra Belew (petitioner) filed a petition for an elective share of his estate. After a hearing, the Clerk & Master found enforceable an antenuptial agreement between petitioner and decedent which provided that each party "hereby waives, releases and relinquishes all

right, title, estate and interest, statutory or otherwise, [to] ... spousal elective share ... ."  Upon exception to the Master's report by petitioner, the Knox County Chancery Court approved and upheld the Master's findings and conclusions.  The issue presented is whether the petitioner knowledgeably entered into the antenuptial agreement.  Both the Clerk & Master and the Chancery Court answered this question in the affirmative.  We affirm the judgment of the trial court.

The petitioner and decedent were "introduced" in July of 1995 when petitioner's brother gave the decedent her phone number.  At that time, petitioner lived in Florida and decedent lived in Knoxville.  They talked frequently on the telephone, and in August 1995, decedent asked petitioner to come and visit him.  They spent five days together in Knoxville.  The relationship progressed rapidly and they soon began to discuss the possibility of marriage.  In October, the petitioner began disposing of many of her belongings in preparation for a move to Knoxville.

After most of her preparation for the departure was complete, decedent called petitioner and told her he had suffered a recurrence of colon cancer which would require surgery.  He told her he would understand if she wanted to cancel or postpone the marriage.  Petitioner wanted to proceed with their wedding plans.  She moved to Knoxville on November 8, 1995.  Decedent entered the hospital three days later, and was not released until approximately ten days before the wedding, which was held on December 9, 1995.

About the time decedent left the hospital, he brought up the subject of an antenuptial agreement.  He asked her to sign an agreement "to appease everyone," because there was much opposition to the wedding by members of his family.  Petitioner testified that "it was not discussed in depth in any way, ... And I didn't make a big deal of it and he didn't make a big deal of it, I just

2

said, it's fine, whatever you feel is best is what we will do." She stated that she had no problem signing the agreement and that she trusted him to take care of her.

The antenuptial agreement was signed on December 1, 1995, eight days before the wedding. The agreement provides in relevant part as follows:

> WHEREAS, both Mr. Belew and Ms. Heinz [petitioner] have made a full disclosure to the other of all relevant financial information concerning his or her financial worth and income; and
>
> WHEREAS, Mr. Belew and Ms. Heinz have each been afforded the opportunity to retain independent legal counsel in order to be fully advised of his or her rights and liabilities under this Agreement and under applicable law; and
>
> WHEREAS, Mr. Belew and Ms. Heinz have each fully considered the effect and consequences of all the provisions of this Agreement upon their respective pecuniary condition and situation, and upon their mutual rights and obligations, and they have each concluded and hereby acknowledge that this Agreement is fair and equitable, and each seeks to be bound by this Agreement.
>
> *    *    *    *
>
> Mr. Belew and Ms. Heinz each hereby waives, releases and relinquishes all right, title, estate and interest, statutory or otherwise, including, but not limited to, homestead, year's support allowance, exempt property, spousal elective share to take against the Will, intestate share, and the right or preference to act as personal representative of the estate of the other, which either may acquire under present or future law as the spouse, widow or widower, heir, heir-at-law, or next-of-kin in any property or assets subject to this Agreement of the other spouse at the other spouse's death.
>
> *    *    *    *
>
> Full Disclosure of Separate Property and Income. Each party has provided to the other party a reasonable and fair disclosure of his or her property and financial obligations. A summary of each such financial statement is attached hereto and identified as Exhibit "A" (for Mr. Belew) and Exhibit "B" (for Ms. Heinz). The parties recognize that such schedules represent a reasonable approximation of the disclosing party's assets and liabilities and acknowledge that each has had adequate opportunity to review the attached summaries, prior to the execution of this Agreement. Each voluntarily and expressly waives any further disclosure of property and financial obligations beyond those provided and referred to herein.
>
> *    *    *    *

3

> Informed Consent with Independent Legal Advice. Mr. Belew and Ms. Heinz each declares that he or she fully understands the terms and provisions of this Agreement, that he or she has been fully informed of his or her legal rights and liabilities (or that he or she has been afforded the time and opportunity to retain independent legal counsel and has chosen not to do so), that he or she believes the provisions of this Agreement are fair, just and reasonable, that he or she signs this Agreement freely and voluntarily, and that he or she enters into this Agreement freely, knowledgeably, and in good faith, and not under duress or undue influence from the other or from any other persons not a party to this Agreement.

The petitioner testified that she did not read the antenuptial agreement, but that she did initial every page. She testified that "I do recall seeing list of assets." Attached to the agreement was a list of decedent's assets and also a list of petitioner's assets.[1] No monetary values were included or assigned to the assets listed.

At the same time the antenuptial agreement was signed, decedent executed a trust agreement, the purpose of which, among other things, was to "provide a residence for Sandra M. Belew for the remainder of her lifetime." The effect of the trust was to create a life estate in the marital residence for the petitioner at the time of decedent's death. The trust further provided that the petitioner "shall have the power to direct the Trustee to sell the residence and purchase a new residence for her use, provided that the purchase price of the new residence is no greater than the net proceeds from the sale of the original residence."

On August 18, 1996, the decedent died from complications arising from his chemotherapy. The petitioner thereafter filed a petition for an elective share of his estate. The estate's personal representative, David Belew (decedent's son), asserted that the antenuptial agreement precluded

---

[1]The list of decedent's assets did not include several items which the decedent owned, but which were of relatively small value. "[I]n the absence of fraud or overreaching, the inadvertent failure to disclose an asset. . .will not invalidate a prenuptial agreement as long as the disclosure that was made provides an essentially accurate understanding of the party's financial holdings." Wilson v. Moore, 929 S.W.2d 367, 371 (Tenn. App. 1996).

4

petitioner from receiving an elective share of the estate. The parties agreed that the decedent was a good and trustworthy man and that he did not try to conceal any of his assets or engage in any other fraudulent acts regarding the agreement. Petitioner's only contention at trial and on appeal is that the failure to include a list of values corresponding to the listed assets renders the antenuptial agreement unenforceable.

Neither the Clerk & Master nor the trial court made a specific finding as to the value of the estate. The Master's report notes that the petitioner argued that the estate was worth between $600,000 and $800,000, and that the personal representative testified that it was worth approximately $385,000, exclusive of the residence and the life insurance proceeds left to the petitioner. The report finds that in addition to leaving petitioner the interest in the residence, he "added [her] as a co-beneficiary with his adult children of life insurance policies on his life, as well as made the petitioner the sole beneficiary of other life insurance policies on his life, leaving the petitioner about $120,000 of the insurance proceeds."

The petitioner testified to the effect that she was visually familiar with most the decedent's major assets before signing the agreement. Her argument revolves around her assertion that she was unaware of the monetary value of the assets:

Q: Okay. Did you have any idea at the time that you married him and the time you entered into the prenuptial agreement that his estate was worth $200,000 or $2,000,000?

A: No, I had no idea.

Q: As you have indicated, you were not really concerned about it because you trusted him to take care of all your needs?

A: Yes.

T.C.A. § 36-5-501 provides that an antenuptial agreement is binding and enforceable "if such agreement is determined ... to have been entered into by such spouses freely, knowledgeably and in good faith and without exertion of duress or undue influence upon either spouse."  Our Supreme Court recently considered the "knowledgeability" requirement regarding antenuptial agreements in the case of Randolph v. Randolph, 937 S.W.2d 815 (Tenn. 1996).  The Randolph court held:

> We interpret the statutory requirement that an antenuptial agreement is enforceable only if entered into "knowledgeably" to mean that the spouse seeking to enforce an antenuptial agreement must prove, by a preponderance of the evidence, either that a full and fair disclosure of the nature, extent and value of his or her holdings was provided to the spouse seeking to avoid the agreement, or that disclosure was unnecessary because the spouse seeking to avoid the agreement had independent knowledge of the full nature, extent, and value of the proponent spouse's holdings.

Id. at 817.

The court, noting that the outcome of each case is determined largely by its own individual circumstances, elaborated upon the knowledge requirement as follows:

> The extent of what constitutes "full and fair" disclosure varies from case to case depending upon a number of factors, including the relative sophistication of the parties, the apparent fairness or unfairness of the substantive terms of the agreement, and any other circumstance unique to the litigants and their specific situation.
>
> *    *    *    *
>
> Of course, the particular facts and circumstances of each case govern, to a great degree, the determination of knowledge.  Some factors relevant to the assessment include, but are not limited to, the parties' respective sophistication and experience in business affairs, the duration of the relationship prior to the execution of the agreement, the time of the signing of the agreement in relation to the time of the wedding, and the parties' representation by, or opportunity to consult with, independent counsel.

Id. at 821-22.

6

Tennessee courts have consistently held that specific appraisal values for assets are not required to sustain the validity of an antenuptial agreement. Randolph, 937 S.W.2d at 822; Wilson v. Moore, 929 S.W.2d 367, 371 (Tenn. App. 1996) ("[M]ost courts have not construed the full and fair disclosure requirement to mandate detailed disclosures such as financial statements, appraisals, balance sheets, or the like."). The Tennessee courts which have considered the full and fair disclosure issue have uniformly determined it to be factually driven. Randolph, 937 S.W.2d at 821-22; Wilson 929 S.W.2d at 371; Cary v. Cary, 937 S.W.2d 777, 782 (Tenn. 1996); Kahn v. Kahn, 756 S.W.2d 685, 692 (Tenn. 1988).

In this case, we are presented with concurrent findings of fact that the petitioner entered into the agreement knowledgeably, and that the decedent made a full and fair disclosure of his assets under the circumstances. We are bound by the concurrent findings of fact by the Clerk & Master and the trial court. T.C.A. § 27-1-113. The Supreme Court so held in a recent case quite similar to this case. Cary, 937 S.W.2d at 782 ("Here, the lower courts made concurrent findings of fact, by which we are bound, that the agreement was entered into freely, knowledgeably, without duress, or undue influence.").

Moreover, our review of the record indicates that the evidence preponderates in favor of the Master's and trial court's findings. The petitioner in this case had substantial business and financial experience, having previously worked as a business manager for a parochial school for a number of years. The agreement was signed eight days before the wedding, and petitioner does not contend that she did not have ample opportunity to review the document and consult with counsel if she had chosen to do so. Finally, under the particular circumstances of this case, enforcement of the terms of the antenuptial agreement does not appear to work a fundamental unfairness upon the petitioner.

7

The facts of this case are very similar to those relied upon in the Wilson case, 929 S.W.2d 367 (Tenn. App. 1996). The Wilson court recited the facts of that case as follows:

> Ms. Moore seemed generally uninterested in the information about Mr. Wilson's holdings. She asked no questions while Mr. Wilson was describing his property and never asked for additional information about these accounts. She reviewed and signed the prenuptial agreement ten days before the wedding without comment or question. The agreement, which was drafted by Ms. Moore's former lawyer at Mr. Wilson's request, specifically recited that both parties were "fully acquainted with the business and resources of the other," that both parties "understood the assets and possessions of the other," that both parties had "answered all questions the other has asked about income and assets," and that both parties "had access to any and all financial information of the other party."
>
> Under all the circumstances of this case, Mr. Wilson made a full and fair disclosure of his financial holdings to Ms. Moore.

Id. at 372.

In the present case, the Master's report finds that:

> [a]t the time of signing the agreement, the petitioner was uninterested in the agreement or the information pertaining to it. She did not read the antenuptial agreement. She testified that she did not give much attention to the attached list of the decedent's assets. . . .The decedent gave a list of his assets to the petitioner and she was visually familiar with most of the major assets.

It is axiomatic and obvious that petitioner's failure to read the agreement, having been given ample opportunity to do so, cannot be grounds for later avoiding it. See e.g., Baker v. Baker, 142 S.W.2d 737, 746 (Tenn. App. 1940).

From our review of the record and the foregoing analysis, we find the trial court was correct in upholding the validity of the antenuptial agreement. As was succinctly and aptly noted by the trial court, "[t]o find otherwise would be to impose a responsibility on the decedent which was not imposed by the petitioner. Here this petitioner had as fair a disclosure, and as much knowledge, as

8

she chose to rely on in order to voluntarily enter into an agreement which she knew would terminate her rights in the property of the deceased."

The judgment of the trial court is affirmed in its entirety. Costs on appeal are assessed to the appellant and the case is remanded to the trial court.

_____
Don T. McMurray, Judge

CONCUR:

_____
Houston M. Goddard, Presiding Judge

_____
Charles D. Susano, Jr., Judge

IN THE COURT OF APPEALS
AT KNOXVILLE

IN THE MATTER OF:          )     KNOX CHANCERY
THE ESTATE OF LEN C. BELEW,  )     C.A. NO. 03A01-9807-CH-00206
DECEASED;                 )
                          )
                          )
                          )
SANDRA BELEW,             )
                          )
     Petitioner-Appellant   )
                          )
                          )   HON. SHARON BELL
vs.                       )   CHANCELLOR
                          )
                          )
                          )
DAVID HUGHES BELEW,        )
Personal Representative,      )
                          )
   Defendant-Appellee     )   AFFIRMED AND REMANDED

## JUDGMENT

This appeal came on to be heard upon the record from the Chancery Court of Knox County, briefs and argument of counsel.  Upon consideration thereof, this Court is of opinion that there was no reversible error in the trial court.

The judgment of the trial court is affirmed in its entirety.  Costs on appeal are assessed to the appellant and the case is remanded to the trial court.

PER CURIAM