IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 9, 2012 Session

**WILLIS BENJAMIN WILLOCKS v. IRENE WARD WILLOCKS**

**Appeal from the Chancery Court for Jefferson County**
**No. 09-166     Ben W. Hooper, Judge**

_____

**No. E-2012-00378-COA-R3-CV-FILED-JANUARY 10, 2013**
_____

In this action for divorce the Chancery Court of Jefferson County awarded the parties a divorce, divided the marital property and awarded the wife alimony in futuro. On appeal, both parties attack the appropriateness of the alimony award. The wife also asserts that the court erred in classifying one asset as the husband's separate property. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

BEN H. CANTRELL, SR.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY,J.,. and NORMA MCGEE OGLE, SP.J., joined.

Gregory H. Harrison, Knoxville, Tennessee, for the appellant, Irene Ward Willocks.

John K. Harber, Knoxville, Tennessee, for the appellee, Willis Benjamin Willocks.

**OPINION**

**I.  FACTS AND PROCEDURAL HISTORY**

The parties married on June 11, 1994. Both parties had been married before and both had children from prior marriages. Husband had accumulated a sizeable estate prior to the marriage, chiefly through an inheritance.

Although the marriage was not a smooth one, the parties lived comfortably, mostly on the husband's income from his separate property. Wife worked the first six years of the marriage earning approximately $30,000 per year. She deposited her checks in her own separate bank account and spent it as she saw fit. She did provide health insurance for the parties through her work and she paid some of the marital expenses from her account.

The parties separated in May of 2007. After husband filed for divorce in September of 2008, he paid wife spousal support of $2000 per month until July of 2009. In December of 2009 wife filed a motion to be paid $12,000 in support arrearages and to set an amount to be paid in the future. In support of her motion she filed an affidavit showing $4,429.99 in monthly expenses and $700 a month income from Social Security. In March of 2010 the court awarded her $12,976 in a lump sum and $2,000 per month going forward.

On the first day of the trial on November 1, 2011, wife filed an amended affidavit showing $2,623.99 in monthly expenses and $934.00 in income from Social Security. After two days of testimony, the court granted the parties a divorce, terminated wife's monthly spousal support and granted wife's counsel additional time to conduct discovery. The requested discovery related to (1) husband's dividend income from his interest in a family business, (2) a joint investment account at AmSouth Investment Services, and (3) the status of a Knox County bond.

After final arguments, the court filed a well-reasoned and comprehensive Memorandum Opinion and Final Judgment. The court found that wife's affidavits of income and expenses were untruthful and that while she collected $70,000 in spousal support prior to trial, she had secretly and fraudulently taken $100,000 from the marital estate and squandered it. The court awarded the wife marital assets in the amount of $383,848.00 (which included the $100,000 she had previously taken). Husband was awarded marital assets worth $257,206.00.

The court awarded the husband $685,100.0 as his separate property. The list included an AIG/Western National annuity showing a value of $202,000.00

Finally, the court found that this was not a case for rehabilitative or transitional alimony or alimony *in solido*. Reciting the pertinent facts in the case, the court awarded

the wife $900.00 per month alimony *in futuro* until the death of either party, the wife's remarriage or the wife's cohabitation with a third person.

## II. ANALYSIS

### A. Alimony

In her first issue, the wife contends that the monthly support awarded to her was too low. The husband contends that the amount was too high. The factors to be considered in resolving this dispute are stated in Tenn. Code Ann. § 36-5-121(i)(1-12)[1].

---

[1](i) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

In numerous cases the courts of this state have stated that the two most relevant facts are the disadvantaged spouse's need and the obligor spouse's ability to pay. See *Robertson v. Robertson*, 76 S.W.3d 537 (Tenn. 2002).

The appropriateness of an alimony award as well as the amount, nature and duration are primarily factual determinations to be made on a case by case basis, *Bratton v. Bratton*, 136 S.W.3d 595 (Tenn. 2004), and the trial judge has wide discretion in choosing the amount and nature of the award. *Aaron v. Aaron*, 909 S.W.2d 408 (Tenn. 1995); *Ingram v. Ingram*, 721 S.W.2d 262 (Tenn. Ct. App. 1986).

The wife's argument in this Court emphasizes her need, the husband's ability to pay and the lifestyle to which she had become accustomed during the marriage. The husband, in seeking a reduction of the alimony award focuses on the relative fault of the wife.

The trial judge found that in 2006 the parties' taxable income was $552,830, almost all of which came from the husband's interest in a family business and his father's estate. At the time of the trial, neither of these sources produced an income. The estate had been closed and the economic downturn had affected the family business so dramatically that it had not paid a dividend since 2006. The court found that now the parties' assets and income will not provide the standard of living they previously enjoyed.

The wife's most recent statement of expenses reflected a need of $2,623.99 per month and an income of $934.00 from Social Security. But the court found that she admitted at trial that even that statement was not a true reflection of her actual expenses.

In the property division wife was awarded two homes worth $207,300 and two cars worth $39,500, all of which were debt free. She also got three certificates of deposit valued at $31,000.

With respect to the wife's fault the court found that the major problem between the parites was the wife's extreme jealousy. She admitted that her jealousy was a problem and that it surfaced as often as once a week. The husband testified that he quit going to

-4-

funerals and class reunions because she pestered him about where he had been and who he saw.

The court further found as follows with respect to the wife's dissipation of the marital assets:

It is equally sad the Wife has been very untruthful with the Court by filing two affidavits of income and expenses (Exhibit No. 7, and Wife's second Affidavit filed 11-01-11) to both of which she admitted were not a true reflection of her income and expenses. She convinced the court to pay her $70,000 in temporary alimony while she knew full well she had secretely and fraudulently taken $100,000 from the marital estate. She got these funds while receiving her alimony and in fact squandered it all, actually misplacing $10,000 or at least that was her testimony. These facts certainly weaken the weight of Wife's testimony.

Taking all the relevant factors into account, we are persuaded that both parties' arguments for a modification of the alimony award should be overruled.

**B. The AIG/Western Annuity**

Husband purchased an AIG annuity in 2003 with funds from his separate assets. Wife was listed as the primary beneficiary. Sometime later in the marriage the contract was converted to Western National Life Insurance Company. In the final decree, the court awarded this asset to the husband as his separate property. The court found as a fact that the annuity was "purchased during marriage with husband's separate funds, and is found to be separate property (an exchange for property acquired before the marriage)."

First, wife insists that the asset should have been classified as marital property. She argues that the record does not support the trial judge's finding that the source of the funds used to acquire the annuity was her husband's separate property property. We concede that the proof is not overwhelming. Husband, however, testified that the money came exclusively from his separate property, and the only income-producing property he had was either acquired before the marriage or inherited. Wife had worked until 2000 drawing a salary of $30,000 per year, but she deposited her checks in her separate account and her contributions to the marital expenses were minuscule. She did not have any

separate income in 2003, the year the annuity was acquired.

Tenn. Code Ann. § 36-4-121(b)(2)B&C defines separate property as "property acquired in exchange for property acquired before the marriage" or "income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1)." Accounts opened with funds from these sources remain separate property even though opened during the marriage. *Wilson v. Moore*, 929 S.W.2d 367 (Tenn. Ct .App. 1996).

We think the trial judge correctly classified the annuity as the husband's separate property.

Next, wife argues that even if the property was husband's separate property it became marital property by transmutation; i.e. by placing it in the name of both spouses. *Batson v. Batson*, 769 S.W.2d 849 (Tenn. Ct. App. 1988). The proof, however, is clear that husband was always listed as the owner of the annuity with wife as the beneficiary. Wife testified that she "understood" the annuity was jointly owned, but there is no proof of where that understanding came from. The record is also devoid of any proof that wife substantially contributed to the preservation or appreciation of this asset.

### III. CONCLUSION

The judgment of the court below is affirmed and the cause is remanded to the Chancery Court of Jefferson County for any further proceedings that may become necessary. Tax the costs on appeal to the wife.

_____
BEN H. CANTRELL, SENIOR JUDGE