IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October  9, 2000 Session

## GERTRUD KRAUT DENEAU v. DONALD HERBERT DENEAU

**Appeal from the Chancery Court for Stewart County**
**No. 99-9-031     Leonard W. Martin, Judge**

---

**No. M2000-00238-COA-R3-CV - Filed February 23, 2001**

---

This divorce case involves property division and alimony after a short term marriage.  The trial court awarded all of the real property to the husband and allowed each party to keep the personal property in his or her possession.  The court ordered the husband to pay $50,000 to the court clerk's office, who shall in turn pay the wife's debt to the Department of Veterans Affairs and disburse the remainder to the wife.  The court refused to award alimony.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Carrie W. Kersh, Clarksville, Tennessee, for the appellant, Gertrud Kraut Deneau.

Markley Runyon Gill, Erin, Tennessee, for the appellee, Donald Herbert Deneau.

### OPINION

Gertrud Kraut Deneau ("Wife") and Donald Herbert Deneau ("Husband") married in 1993, separated for a time in 1996, reconciled, and separated again in 1999.  Wife filed for divorce.  The parties stipulated grounds for divorce, and the hearing concerned property division and alimony.

Both parties had separate assets at the time of the marriage.  Wife owned a home at the time of the marriage and Husband paid off the indebtedness on the house immediately after the honeymoon.  He also paid for taxes, utilities, and improvements, estimating that he spent a total of approximately $35,000 on her property.  His testimony indicated that he expected that money to be repaid when the house was sold.  Wife denied any such agreement, stating that Husband had said the house note payment was a gift. When Wife later sold the house for $57,000, Husband received none of the proceeds.

Wife was employed at Shoney's at the time of the marriage but quit her job at Husband's request and did not work for the first five of the six years the parties were married. At the time of the marriage, Wife was receiving survivor benefits following the death of a previous husband. She continued to draw those benefits, although they should have stopped upon her marriage. Husband testified that he did not know Wife continued to receive the benefits. When the Department of Veterans Affairs learned of the wrongful payments, it demanded restitution of $35,540. Although Wife sold her house for $57,000, she repaid only $20,000 of her debt to the Department. The court inquired as to whether Wife's benefits could be reinstated after her divorce from Husband, and Wife's counsel stated that they could, after the debt was paid.

Husband owned a farm prior to the marriage, and Wife did some work on it, although the parties disagree about how much work she did. The farm contained a trailer where the parties lived for part of the marriage. Husband spent some money building a house on the farm, but the house was never completed. No testimony was offered regarding any increase in the value of the farm during the marriage. Husband sold some timber from the farm, although the parties disagree about the amount he received for the sale.

Husband testified that he did not know how much money he had in his accounts when the parties married, but Wife put that figure at about $93,000.

Throughout the marriage, Husband received $5,500 per month from various sources, and testified that he gave Wife $1,000 per month. During the marriage, Husband gave Wife jewelry worth about $23,000 and a $24,000 car which he titled in her name. Husband used his funds to pay for several expensive vacations that the parties took together. He testified that he had approximately $142,000 in his accounts at the time of the trial.

Husband used about $133,000 of his funds to purchase a house, and put both parties' names on the deed. This became the marital home.

During the marriage, Husband also purchased two other parcels of land. He had previously owned the parcels and had sold them to a friend prior to the marriage. Pursuant to an agreement with the friend, Husband repurchased the land for the same price he had received for it, and testified that he used his separate funds to pay for the land. The deed for the two tracts listed Husband alone as the purchaser.

During the marriage, Husband had medical problems, and Wife provided care for him. The parties disagree as to the seriousness of his condition and the amount of care Wife provided. Wife claims he was hospitalized several times during the marriage, and that she provided care for him during that time. Husband admitted that he had a few health problems, but denied he was disabled in any way. He maintained that he could "kick a lot of butts yet."

Wife admitted to having a gambling problem. Husband introduced evidence of Wife's checks written to a casino in Illinois and to "State Line Lotto" in Kentucky. Wife admitted pawning some jewelry, but claimed not to have pawned any that Husband gave her. She claimed to have received $400 or $500 for two rings, but she could not remember where she pawned the jewelry. She also testified that she had spent most of the $37,000 remaining from her house proceeds, "[s]ome of it" on gambling, and that she spent the money she received in survivor benefits "probably gambling."

Upon hearing the evidence, the trial court found that "Mrs. Deneau is not a credible witness. Mr. Deneau, on the other hand, appeared to me, while he's cantankerous and opinionated, to be credible." The court then awarded each party the personal property in his or her possession. Husband was awarded all of the real property. The trial court considered the value of the marital home ($133,000) and the increase in Husband's bank accounts ($49,000), divided the total by two, and found the value of half of the marital estate to be $91,000. The court determined that, because of Wife's dissipation of assets and because she had never repaid Husband the money he spent on her house, she should not be awarded half of the marital estate. The court awarded Wife $50,000 to be paid to the court clerk. The clerk was to satisfy Wife's debt to the government and to disburse the remainder to Wife. Wife was awarded no alimony, but the court noted that her survivor benefits could be reinstated upon payment of her debt.

This appeal ensued. Wife challenges the classification of certain property, the division of marital property, and the trial court's refusal to award alimony. Husband filed a cross-appeal challenging the cash award to Wife.

## I. Standard of Review

We review the findings of fact by the trial court *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Because the trial judge is in a better position to weigh and evaluate the credibility of the witnesses who testify orally, we give great weight to the trial judge's findings on issues involving credibility of witnesses. *Gillock v. Board of Prof'l Responsibility*, 656 S.W.2d 365, 367 (Tenn.1983).

In cases involving issues of classification and distribution of property, a trial court's decisions enjoy a presumption of correctness. *Dunlap v. Dunlap*, 996 S.W.2d 803, 814 (Tenn. Ct. App. 1998). Accordingly, a trial court's division of the marital estate should be presumed proper unless the evidence preponderates otherwise. *Lancaster v. Lancaster*, 671 S.W.2d 501, 502 (Tenn. Ct. App. 1984). Likewise, appellate courts give wide latitude to the trial court's discretion regarding support decisions. *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App.1989).

## II. Classification of Property

Tennessee is a "dual property" state, meaning that the divorce statutes differentiate between marital and separate property. *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). Generally, separate property is that which was owned by one party before the marriage or given to one party during the marriage. Tenn. Code Ann. § 36-4-121(b)(2) (1996). Marital property is, generally, that which was acquired by either or both parties during the marriage. Tenn. Code Ann. § 36-4-121(b)(1). However, property acquired by one party during the marriage with that party's separate pre-marital funds is considered separate property. Tenn. Code Ann. § 36-4-121(b)(2)(B) (separate property includes "property acquired in exchange for property acquired before the marriage"); *Wilson v. Moore*, 929 S.W.2d 367, 374 (Tenn. Ct. App. 1996). Likewise, income received from a party's separate assets remains separate property, with certain exceptions. Tenn. Code Ann. § 36-4-121(b)(2)(C).

The clear implication of the trial court's explanation of its award is that the court considered the marital estate, subject to division, as including the marital home and the increase in Husband's accounts during the marriage.

Wife claims that the court improperly classified two tracts of land as Husband's separate property. Wife claims that, because the property was purchased during the marriage, it is marital property and should be divided. The trial court obviously believed Husband's testimony that he purchased that land with his separate funds. We find no error in the court's treatment of the land as Husband's separate property. *Wilson*, 929 S.W.2d at 374 (property acquired in exchange for separate property remains separate property).

Wife also argues that although Husband owned the farm at the time of the marriage, her contribution to the upkeep of the farm should entitle her to a share in the increase in its value. It is true that the increase in value of separately owned property may, under some circumstances, be considered marital property. Tenn. Code Ann. § 36-4-121(b)(1)(B) (marital property includes increase in value of separate property if each party substantially contributed to its preservation and appreciation). No evidence was offered as to the present value of the farm, however, nor as to any increase in value during the marriage. The trial court made no mention of any increase in value when determining that the farm was Husband's separate property. Because the record fails to demonstrate the existence of any increase in value, we cannot say that the trial court erred in not classifying or awarding it. *Brock v. Brock*, 941 S.W.2d 896, 900 (Tenn. Ct. App. 1996) ("a court cannot divide and/or distribute what is 'not there'").

Wife also argues that she should share in the proceeds Husband received from the sale of timber from the farm. As noted above, income received from a party's separate assets remains that party's separate property. Tenn. Code Ann. § 36-4-121(b)(2)(C). We find the income from the timber to be Husband's separate property.

### III. Division of Marital Property

After the property is classified, courts are to make an equitable division of the marital property. Tenn. Code Ann. § 36-4-121(a)(1). An equitable distribution is not necessarily an equal one, however. *Batson*, 769 S.W.2d at 859. The court is to consider several factors in its distribution, including the duration of the marriage, the contribution to and dissipation of the marital estate, the value of the separate property, and the estate of each party at the time of the marriage. Tenn. Code Ann. § 36-4-121(c) (listing the factors to be considered). The court's distribution of property "is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case." *Batson*, 769 S.W.2d at 859. A trial court has a great deal of discretion concerning the manner in which it divides marital property. *Smith v. Smith*, 984 S.W.2d 606, 609 (Tenn. Ct. App. 1997); *see also Wallace v. Wallace*, 733 S.W.2d 102, 106 (Tenn. Ct. App. 1987).

Wife argues that the distribution of property was inequitable. She argues, correctly, that the trial court is to make the distribution of marital property without regard to fault. Tenn. Code Ann. § 36-4-121(a)(1). She claims that, in the case before us, the trial court allowed her "fault" in gambling away some of the parties' assets to influence its decision regarding the marital property. The trial court could not ignore, nor can we, the fact that Wife gambled away thousands of dollars. Although Wife attempts to characterize the trial court's consideration of her gambling as awarding property based on "fault," we believe the gambling is properly characterized as "dissipation of the marital or separate property," which the trial court is required to consider. Tenn. Code Ann. § 36-4-121(c)(5). We find no error in considering that money which was gambled away when determining an equitable division of property.

Wife also challenges the trial court's determination that the money Husband paid toward her mortgage and improvements to her house was a loan. She contends that the payment was a gift, and therefore her separate property. In making its division of marital property, the court stated that it had reduced Wife's share, in part, because "she got all of that money out of him on that house, and he never got any of it back." The court heard conflicting testimony regarding Husband's payments, and determined that the money was a loan. In matters involving credibility of witnesses, we give great weight to the trial court's findings. *Gillock*, 656 S.W.2d at 367. We find no error in the trial court's considering the payments as a loan. In fact, it really doesn't matter whether the payments were a loan to her or a gift to her because they were only factored in by the trial court in its determination of how to equitably distribute the marital assets. The court was entitled to consider Husband's payments toward the house and the fact that Wife disposed of the money for her own purposes when deciding the equities between the parties.

Wife also contends that the trial court improperly reduced its award of property to her because of the jewelry and the car that Husband gave to her. A party's separate assets are also a factor for the court to consider when dividing the marital property, and the goal is an equitable division. Tenn. Code Ann. § 36-4-121(c)(6). We find no error in such consideration.

Husband also contends that the marital property was inequitably divided. He claims that Wife should not have been awarded $50,000. He argues that Wife made no financial contribution to the marital estate, instead, depleting it with her gambling. He argues, essentially, that Wife has already squandered enough of his money, and that she shouldn't have any more. The trial court considered the marital home and the increase in Husband's accounts to be the only items of marital property. When Husband purchased the home for the parties and placed both names on the deed, he is presumed to have made a gift to the marital estate. *McClellan v. McClellan*, 873 S.W.2d 350, 351 (Tenn. Ct. App.1993); *Barnhill v. Barnhill*, 826 S.W.2d 443, 452 (Tenn. Ct. App.1991). Nothing in the record rebuts that presumption. Likewise, the increase in his accounts,[1] which represented money received during the marriage, was classified as marital property. Husband does not argue that the court improperly classified property; his real objection is that the distribution was not equitable. Tenn. Code Ann. § 36-4-121(b)(1)(A).

The court added the values together and determined that an equal distribution of the marital estate would result in an award to each party of $91,000. The court awarded Wife $50,000 after taking into account the $35,000 Husband had spent on her house, the dissipation of funds by Wife through her gambling, and other appropriate factors. The court also took into account the fact that Wife made non-monetary contributions to the marriage when making its award. In this short term marriage, the trial court attempted to place the parties as nearly as possible in the financial positions they would have held had the marriage never taken place. *Batson*, 769 S.W.2d at 859. We find no error in the court's distribution of marital property.

## IV. Alimony

Tennessee law provides alimony in some situations. In reviewing the propriety of an alimony award, we must consider a number of factors, including the duration of the marriage; the separate assets of the parties; the relative earning capacity, obligations, needs and financial resources of the parties; and the relative fault of the parties. Tenn. Code Ann. § 36-5-101(d)(1)(A)-(L) (listing the factors to be considered). Because support decisions are factually driven and involve considering and balancing numerous factors, appellate courts give wide latitude to the trial court's discretion. *Cranford*, 772 S.W.2d at 50.

Wife sought rehabilitative alimony of $1,000 per month for two years. She argues that Husband's income and assets and her own lower earning capacity establish that she is a disadvantaged spouse. She contends that she was out of the workforce for five years at Husband's insistence, and that the court failed to consider her contributions to the marriage. She also points to the greater award of marital property to Husband.

---

[1]Husband has argued that the trial court erred in accepting Wife's estimate of the amount of money in his accounts at the time of the marriage. Husband, when asked the same question, stated, "I would hesitate to answer that." Because Wife answered the question, while Husband would not, we find no error in the trial court's acceptance of Wife's estimate.

Upon reviewing the record, we find no error in the trial court's refusal to award alimony to Wife. The marriage was one of short duration, Wife had little going into the marriage, she retained money from the sale of her house, she received valuable gifts from Husband during the marriage, she "gambled away thousands upon thousands of dollars," and she was awarded $50,000 as her equitable share of the marital property. Her survivor benefits will be reinstated once her debt is paid. We affirm the trial court's decision not to award alimony to Wife.

V.

For the reasons stated above, we affirm the trial court's awards of property and its refusal to award alimony. This case is remanded for such further proceedings as may be necessary. Costs are taxed equally to both parties, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE