IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
JULY 11, 2001 Session

## PATRICIA GORE v. GEORGE D. GORE

**Direct Appeal from the Circuit Court for Williamson County**
**No. I-99389; The Honorable Russ Heldman, Judge**

---

**No. M2000-02412-COA-R3-CV - Filed December 28, 2001**

---

This appeal arises from a complaint for divorce filed by the Appellee in the Circuit Court of Williamson County. The trial court awarded the Appellee a divorce on the grounds of inappropriate marital conduct and adultery. The trial court divided the marital property and ordered the Appellant to pay the Appellee alimony in futuro and child support for the parties' two minor children. The trial court ordered the Appellant to maintain life insurance to secure the alimony and child support obligations. Additionally, the trial court entered a permanent injunction restraining the Appellant from taking the children in the presence of the Appellant's girlfriend.

The Appellant appeals the decision of the Circuit Court of Williamson County regarding the division of marital property, the award of alimony in futuro, the amount of child support awarded, the amount of life insurance ordered, and the permanent injunction. For the reasons stated herein, we affirm in part, reverse in part, and vacate in part the trial court's decision. We remand this case to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed in Part,**
**Reversed in Part, Vacated in Part and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Robert L. Jackson, Larry Hayes, Jr., Nashville, TN, for Appellant

Denise Andre, Franklin, TN; Thomas F. Bloom, Nashville, TN, for Appellee

**OPINION**

# I. Facts and Procedural History

The Appellant, George D. Gore ("Mr. Gore"), and the Appellee, Patricia A. Gore ("Ms. Gore"), were married for twenty-five years. The parties had three children ("the children") born of the marriage, two of whom were minors at the time of the litigation which is the subject of this appeal. In April, 1999, the parties separated after Ms. Gore discovered that Mr. Gore was having an affair with Kim Cannon ("Ms. Cannon").

On July 1, 1999, Ms. Gore filed a complaint for divorce in the Circuit Court of Williamson County, alleging inappropriate marital conduct and adultery. Ms. Gore requested that a restraining order issue enjoining Mr. Gore from dissipating marital assets and from taking the children in the presence of Ms. Cannon. Mr. Gore failed to file an answer to the complaint. On July 2, 1999, the trial court granted Ms. Gore's request for a restraining order with regard to the dissipation of assets but denied Ms. Gore's request for a restraining order with regard to Ms. Cannon.

On July 28, 1999, the parties entered into an agreed order with respect to the pendente lite issues. Pursuant to that agreed order, Ms. Gore received temporary custody of the children and exclusive use of the marital residence. Mr. Gore received standard visitation with the children. Mr. Gore was ordered to pay Ms. Gore $300.00 every two weeks and was ordered to maintain certain debts of the parties. The order provided that the restraining order with regard to the dissipation of assets was to remain in effect.

The hearing on the complaint for divorce was held on August 9, 2000. Ms. Gore testified that she was forty-nine years old and had a high school education. Ms. Gore testified that she worked as a hairstylist for the first five years of the marriage but had been a homemaker for the last twenty years of the marriage. Ms. Gore testified that she no longer had her hairstylist license and did not want to work as a hairstylist. Ms. Gore testified that she had a medical condition during the marriage called acoustic neuroma. Ms. Gore testified that as a result of the acoustic neuroma, she had facial nerves cut. Ms. Gore testified that she was fully recovered from acoustic neuroma. Ms. Gore testified that she had high blood pressure but had no health problems that prevented her from working.

Ms. Gore testified that after the parties separated, she took two jobs. She stated that she worked one or two days per week at a retail store, Northern Reflections, and made $6.50 per hour. Ms. Gore testified that she also worked part time at a bakery, Costco, and made $10.50 per hour. She said that she worked full time hours at Costco during busy seasons but worked part time hours during slow seasons. Ms. Gore testified that she requested to work full time at Costco but there were no full time positions open at that time. She testified that her gross wages per month based on full time hours and including her pay from both jobs equaled $1,928.22. She also testified that her wages varied each month depending on the amount of hours she worked. She stated that she had the ability to make between $17,000.00 and $20,000.00 per year. Ms. Gore testified that Costco provided medical, dental, and eye insurance which was supposed to go into effect in October, 2000. She also testified that she enjoyed her job at Costco.

Mr. Gore testified that he was forty-eight years old and worked as a tool and die maker for Saturn Corporation. He stated that he worked between forty and sixty hours per week. Mr. Gore testified that his base salary was $52,000.00 but that he earned overtime in addition to his base salary. He said that he was not guaranteed to have overtime hours. In 1997, Mr. Gore's gross income was $73,069.00. In 1998, Mr. Gore's gross income was $75,721.00. In 1999, his gross income was $83,664.00. Mr. Gore testified that his gross income in 2000 through July 31, 2000 was $53,741.00. Mr. Gore agreed that his gross income through July 31, 2000 amounted to $7,677.42 in gross income per month. He stated that a portion of the gross income through July 31, 2000 was based on working the Christmas shutdown. Mr. Gore testified that in the past five years, he had only worked the Christmas shutdown once.

Mr. Gore admitted that he had an affair with Ms. Cannon while he was married to Ms. Gore. Mr. Gore testified that since July 2, 1999, he had spent approximately $2,000.00 in gambling and gambling-related expenses such as food and transportation. Mr. Gore stated that he gambled "to have a good time and have some fun." Mr. Gore testified that he had reduced the amount that he was contributing to the 401(k) retirement account. He listed on his income and expense statement that his monthly gross income was $5,600.00 per month, but he agreed that his monthly gross income was actually more than $5,600.00 per month.

On August 9, 2000, the trial court entered an order granting Ms. Gore an absolute divorce from Mr. Gore on the grounds of inappropriate marital conduct and adultery. The trial court reserved all other matters for inclusion in the final decree of divorce entered on October 6, 2000. The trial court stated in the final decree of divorce that all averments in Ms. Gore's complaint were deemed admitted for purposes of adjudication, with the exception of the claim for divorce, due to Mr. Gore's failure to file an answer to the complaint. The trial court found that Mr. Gore had violated the temporary restraining order with regard to the dissipation of assets in that he used marital assets to gamble which was not a reasonable living expense. He also found that Mr. Gore violated the temporary restraining order with regard to the dissipation of assets in that he had reduced the amount of money he was contributing to the 401(k) retirement account. The trial court found that Mr. Gore had "unclean hands" in that he had failed to follow the temporary restraining order with regard to the dissipation of assets and had given inconsistent testimony to the trial court about his monthly income. As a result of Mr. Gore's "unclean hands," the court stated that it could not consider his two proposals for division of property and assets that he submitted.

The trial court divided the marital property as follows:

Ms. Gore

-3-

| Item | Value | Debt | Net Value |
|---|---|---|---|
| (1) Marital Residence | $160,000.00 | $35,693.42 | $124,306.58 |
| (2) Bank of America Checking Account | $200.00 | n/a | $200.00 |
| (3) ½ Bank of America Savings Account | $50.00 | n/a | $50.00 |
| (4) ½ Union Planters Checking Account | $300.00 | n/a | $300.00 |
| (5) ½ Bank of America Savings Account | $2,098.50 | n/a | $2,098.50 |
| (6) ½ UAW Credit Union | $359.00 | n/a | $359.00 |
| (7) ½ Bank of America CD | $5,000.00 | n/a | $5,000.00 |
| (8) ½ Saturn Corporation 401(k) | $80,000.00 | n/a | $80,000.00 |
| (9) ½ General Motors Pension | none given | n/a | none given |
| | TOTAL FOR MS. GORE: | | $212,314.08 |

Mr. Gore

| Item | Value | Debt | Net Value |
|---|---|---|---|
| (1) Boat, Trailer, and Motor | $1,500.00 | -0- | $1,500.00 |
| (2) Atmos Energy Stock | $636.00 | n/a | $636.00 |
| (3) Waterhouse Securities | $6,333.00 | n/a | $6,333.00 |
| (4) New York Life Insurance | $10,459.70 | n/a | $10,459.70 |
| (5) John Hancock Life Insurance | $1,697.50 | n/a | $1,697.50 |
| (6) ½ Bank of America Savings Account | $50.00 | n/a | $50.00 |
| (7) ½ Union Planters Checking Account | $300.00 | n/a | $300.00 |
| (8) ½ Bank of America Savings Account | $2,098.50 | n/a | $2,098.50 |
| (9) ½ UAW Credit Union | $359.00 | n/a | $359.00 |
| (10) ½ Bank of America CD | $5,000.00 | n/a | $5,000.00 |
| (11) ½ Saturn Corporation 401(k) | $80,000.00 | n/a | $80,000.00 |
| (12) ½ General Motors Pension | none given | n/a | none given |
| | TOTAL FOR MR. GORE: | | $108,433.70 |

Additionally, the trial court ordered Mr. Gore to pay the parties' unsecured debt in the amount of $5,339.00. Taking into account the total ascertainable net value of marital property awarded to each of the parties including the marital debt that Mr. Gore was ordered to pay, the percentage of the marital property awarded to Ms. Gore was approximately sixty-seven percent, and the percentage of the marital property awarded to Mr. Gore was approximately thirty-three percent.

The trial court awarded custody of the children to Ms. Gore and awarded standard visitation to Mr. Gore. Mr. Gore was also ordered to pay alimony in futuro to Ms. Gore in the amount of $1,500.00 per month until Ms. Gore's death or remarriage. Mr. Gore was to maintain life insurance in the amount of $200,000.00 to secure his alimony obligation. The trial court ordered Mr. Gore to pay child support to Ms. Gore in the amount of $1,712.00 per month. Mr. Gore was ordered to maintain life insurance in the amount of $150,000.00 to secure his child support obligation. The trial court entered a permanent restraining order enjoining Mr. Gore from permitting the children to have contact with Ms. Cannon during his visitation. This appeal followed.

## II. Standard of Review

The standard of review for a non-jury case is *de novo* upon the record. See Wright v. City of Knoxville, 898 S.W.2d 177, 181 (Tenn. 1995). There is a presumption of correctness as to the trial court's factual findings, unless the preponderance of the evidence is otherwise. See TENN. R. APP. P. 13(d). For issues of law, the standard of review is *de novo*, with no presumption of correctness. See Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 80 (Tenn. 1996).

## III. Law and Analysis

Mr. Gore presents the following issues for our review:

1. Whether the trial court erred by awarding Ms. Gore sixty-seven percent of the parties' marital assets;
2. Whether the trial court erred by awarding Ms. Gore alimony in futuro in the amount of $1,500.00 per month instead of rehabilitative alimony;
3. Whether the trial court erred by requiring Mr. Gore to maintain $200,000.00 in life insurance to secure his alimony obligation;
4. Whether the trial court erred by taking judicial notice of certain matters in this case;
5. Whether the trial court erred by awarding Ms. Gore child support in the amount of $1,712.00 per month;
6. Whether the trial court erred by requiring Mr. Gore to maintain $150,000.00 in life insurance to secure his child support obligation; and
7. Whether the trial court erred by permanently enjoining Mr. Gore from taking the children in the presence of Ms. Cannon.
Ms. Gore presents the following additional issues for our review:
8. Whether Mr. Gore's failure to file a responsive pleading constituted an admission of Ms. Gore's allegations regarding the financial issues;
9. Whether the trial court properly refused to consider Mr. Gore's proposals as to property division and alimony due to Mr. Gore's "unclean hands"; and
10. Whether this Court should award Ms. Gore her attorney's fees on appeal.
We will examine each issue in turn.

## Division of Marital Property

The first issue presented for our review is whether the trial court erred by awarding Ms. Gore sixty-seven percent of the parties' marital assets. After characterizing the parties' assets as either marital or separate property, the trial court will give each party their separate property and then make an equitable division of marital assets. See Batson v. Batson, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). An equitable division of property does not necessarily mean an equal division. See Bookout v. Bookout, 954 S.W.2d 730, 732 (Tenn. Ct. App. 1997); Batson, 769 S.W.2d at 859. "The division of the estate is not rendered inequitable simply because it is not mathematically equal, or because each party did not receive a share of every item of marital property." King v. King, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998) (citing Cohen v. Cohen, 937 S.W.2d 823, 832 (Tenn. 1996); Ellis v. Ellis, 748

S.W.2d 424, 427 (Tenn. 1988); Brown v. Brown, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994)). In determining what constitutes an equitable division of marital assets, the court will consider the factors listed in section 36-4-121(c) of the Tennessee Code.[1] The court must make the division of marital property without regard to marital fault. See TENN. CODE ANN. § 36-4-121(a)(1) (Supp. 2000).

The trial court's classification and division of marital property enjoys a presumption of correctness and will be reversed or modified only if the evidence preponderates against the trial court's decision. See Lancaster v. Lancaster, 671 S.W.2d 501, 502 (Tenn. Ct. App. 1984); Hardin v. Hardin, 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983). "[T]he trial court is granted broad discretion in adjusting and adjudicating the parties' interest in all jointly owned property. Its decision regarding division of the marital property is entitled to great weight on appeal." Watters v. Watters, 959 S.W.2d 585, 590 (Tenn. Ct. App. 1997) (citing Batson, 769 S.W.2d at 859). The fairness of the property division is judged upon its final results. See Wade v. Wade, 897 S.W.2d 702, 717 (Tenn. Ct. App. 1994) (citing Thompson v. Thompson, 797 S.W.2d 599, 604 (Tenn. Ct. App. 1990)).

In the case at bar, Mr. Gore argues that the trial court erred in its division of marital property. Mr. Gore suggests that this Court should divide the house and the New York Life Insurance policy equally between the parties so that Ms. Gore would receive fifty-one percent of the marital property and Mr. Gore would receive forty-nine percent of the marital property. Mr. Gore argues that an equal division of the parties' marital assets would constitute an equitable division. As stated above, an equitable division of property does not necessarily mean an equal division. The primary difference

---

[1]Section 36-4-121(c) provides:
> In making equitable division of marital property, the court shall consider all relevant factors including:
> (1) The duration of the marriage;
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
> (4) The relative ability of each party for future acquisitions of capital assets and income;
> (5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
> (6) The value of the separate property of each party;
> (7) The estate of each party at the time of the marriage;
> (8) The economic circumstances of each party at the time the division of property is to become effective;
> (9) The tax consequences to each party; and
> (10) Such other factors as are necessary to consider the equities between the parties.

TENN. CODE ANN. § 36-4-121(c) (Supp. 2000).

between Ms. Gore receiving sixty-seven percent of the marital property and Mr. Gore receiving thirty-three percent of the marital property is due to the award of the marital residence to Ms. Gore. The trial court was not required to divide the equity in the marital residence. Rather, in awarding the marital residence, the trial court had to give special consideration to Ms. Gore as the spouse having physical custody of the children. See TENN. CODE ANN. § 36-4-121(d) (Supp. 2000).

The trial court stated that it considered all the factors in section 36-4-121 in making an equitable distribution of marital property. We conclude that the trial court properly considered these factors in awarding Ms. Gore a greater share of the marital estate than Mr. Gore in this case. Mr. Gore has greater income and earning potential than Ms. Gore, as well as a greater ability to accumulate assets in the future. In light of the duration of the parties' marriage, Ms. Gore's significant contributions to the marriage as a homemaker, and the great disparity in the parties' earning abilities, we hold that the trial court did not abuse its discretion in awarding Ms. Gore a larger portion of the marital assets than Mr. Gore. Under the circumstances of this case, the trial court achieved an equitable distribution of the parties' marital property. Accordingly, we affirm the trial court's award of sixty-seven percent of the marital property to Ms. Gore.

## Alimony

The second issue presented for our review is whether the trial court erred by awarding Ms. Gore alimony in futuro in the amount of $1,500.00 per month instead of rehabilitative alimony. The trial court has broad discretion concerning the amount, type, and duration of spousal support based on the particular facts involved. See Watters, 959 S.W.2d 585 at 593. The trial court's decision is entitled to great weight on appeal and will not be disturbed absent a showing of abuse of discretion. See id. (citing Aaron v. Aaron, 909 S.W.2d 408, 410 (Tenn. 1995); Luna v. Luna, 718 S.W.2d 673, 675 (Tenn. Ct. App. 1986)); Wilson v. Moore, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996). Accordingly, this Court is not inclined to alter a trial court's award of alimony "unless it is not supported by the evidence or is contrary to the public policy embodied in the applicable statutes." Brown v. Brown, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994) (citing Gilliam v. Gilliam, 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988); Ingram v. Ingram, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986)).

Whether an alimony award is appropriate is dependent on the facts and circumstances of each case. While the alimony analysis is factually driven, the court must also balance several statutory factors including those enumerated in section 36-5-101(d)(1) of the Tennessee Code.[2] See Denton v.

_____

[2] Section 36-5-101(d)(1) provides:
> It is the intent of the general assembly that a spouse who is economically
> disadvantaged, relative to the other spouse, be rehabilitated whenever
> possible by the granting of an order for payment of rehabilitative, temporary
> support and maintenance. Where there is such relative economic disadvantage
> and rehabilitation is not feasible in consideration of all relevant factors,
> including those set out in this subsection, then the court may grant an order for
> payment of support and maintenance on a long-term basis or until the death

(continued...)

Denton, 902 S.W.2d 930, 932 (Tenn. Ct. App. 1995); Brown, 913 S.W.2d at 169. Although all statutory factors listed in section 36-5-101(d)(1) are important and will be considered by the trial court, "need and the ability to pay are the critical factors in setting the amount of an alimony award." Koja v. Koja, 42 S.W.3d 94, 100 (Tenn. Ct. App. 2000).

Section 36-5-101(d)(1) reflects a preference for temporary support, or rehabilitative alimony, as opposed to long-term support, or alimony in futuro. See TENN. CODE ANN. § 36-5-101(d)(1); see also Wilson, 929 S.W.2d at 375. "The purpose of rehabilitative alimony is to enable the disadvantaged spouse to acquire additional job skills, education, or training that will enable him or her to be more self-sufficient." Kinard v. Kinard, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998) (citing Smith v. Smith, 912 S.W.2d 155, 160 (Tenn. Ct. App. 1995); Cranford v. Cranford, 772 S.W.2d 48, 51 (Tenn. Ct. App. 1989)). In contrast, the purpose of alimony in futuro is to provide support to an economically disadvantaged spouse who is unable to achieve some degree of self-sufficiency. See Loria v. Loria, 952 S.W.2d 836, 838 (Tenn. Ct. App. 1997). A court may grant alimony in futuro only

---

[2](...continued)

> or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
>
> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
>
> (C) The duration of the marriage;
>
> (D) The age and mental condition of each party;
>
> (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
>
> (F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
>
> (G) The separate assets of each party, both real and personal, tangible and intangible;
>
> (H) The provisions made with regard to the marital property as defined in § 36-4-121;
>
> (I) The standard of living of the parties established during the marriage;
>
> (J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
>
> (K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and
>
> (L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

TENN. CODE ANN. § 36-5-101(d)(1) (Supp. 2000).

where rehabilitation of the economically disadvantaged spouse is not feasible.  See Aaron v. Aaron, 909 S.W.2d 408, 410 (Tenn. 1995); Self v. Self, 861 S.W.2d 360, 361 (Tenn. 1993).

In the case at bar, Mr. Gore argues that the trial court should have awarded Ms. Gore rehabilitative alimony rather than alimony in futuro.  Mr. Gore argues that Ms. Gore is gainfully employed and has the ability to maintain a reasonable level of earnings and remain self-sufficient. Based upon the evidence presented at trial, we conclude that an award of rehabilitative alimony is not appropriate in this case.  In consideration of the disparity in the parties' earning capacities, Ms. Gore's limited earning capacity, the infeasibility of Ms. Gore's rehabilitation, the twenty-five year duration of the marriage, the tangible and intangible contributions that Ms. Gore made as a homemaker during the marriage, and the fault of Mr. Gore in precipitating this action for divorce, we hold that the trial court did not err in awarding Ms. Gore alimony in futuro.  Accordingly, we affirm the trial court's decision awarding Ms. Gore alimony in futuro in the amount of $1,500 per month until her death or remarriage.

## Life Insurance to Secure Alimony Obligation

The third issue presented for our review is whether the trial court erred by requiring Mr. Gore to maintain $200,000.00 in life insurance to secure his alimony obligation.  Mr. Gore does not dispute that he is required to maintain life insurance to secure his alimony obligation.  Rather, Mr. Gore argues that in the event this Court modifies Mr. Gore's alimony obligation, $200,000.00 would be an excessive amount of life insurance for Mr. Gore to maintain.  Because we decline to modify Mr. Gore's alimony obligation, we likewise decline to modify the amount of life insurance he must maintain to secure his alimony obligation.  Accordingly, we affirm the trial court's order requiring Mr. Gore to maintain $200,000.00 in life insurance to secure his alimony obligation.

## Judicial Notice

The fourth issue presented for our review is whether the trial court erred by taking judicial notice of certain matters in this case.  Rule 201 of the Tennessee Rules of Evidence permits a trial court to take judicial notice of adjudicative facts whether requested or not.  See TENN. R. EVID. 201(c).  A trial court may take judicial notice of only certain kinds of facts.  "A judicially noticed fact must be one not subject to reasonable dispute, in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  TENN. R. EVID. 201(b).

In the case at bar, the trial court took judicial notice that "there is an implied prejudice to people with facial disfigurements, in the workplace, though not always overtly prejudiced, those individuals with facial disfigurements are often not accorded the same kind of treatment as people with attractive facial features.  As a result, the Court found that Ms. Gore faces an uphill battle in the work place in attempting to have certain options available to her that she might not otherwise have." We find that the trial court erred by taking judicial notice that Ms. Gore's facial disfigurement would cause her to face an uphill battle in the workplace due to an implied prejudice to people with facial

disfigurements. This is not the kind of fact of which a court may take judicial notice. This fact is subject to reasonable dispute in that it is neither generally known within the territorial jurisdiction of the trial court nor capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Although we find that the trial court erred by taking judicial notice, we find this error was harmless in that it did not affect the merits of the trial court's decision. The trial court took judicial notice of an implied prejudice to Ms. Gore in the workplace in the context of its alimony award to Ms. Gore. The trial court stated, however, that it also considered Ms. Gore's age and limited capacity to earn income comparable to Mr. Gore, Ms. Gore's contributions as a housewife to the marital estate, Mr. Gore's fault, all the factors listed in section 36-5-101(d)(1), all the evidence, and the credibility of Ms. Gore as a witness in making its award of alimony in futuro. We find that the evidence preponderates in favor of the trial court's award of alimony in futuro even absent the judicially noticed fact of an implied prejudice to Ms. Gore in the workplace. Accordingly, we find that the trial court's error was harmless error in that it did not affect the merits of the trial court's decision.

**Child Support**

The fifth issue presented for our review is whether the trial court erred by awarding Ms. Gore child support in the amount of $1,712.00 per month. In determining child support, courts must apply as a rebuttable presumption the Tennessee Child Support Guidelines ("the Guidelines") promulgated by the Tennessee Department of Human Services. See TENN. CODE ANN. § 36-5-101(e)(1) (Supp. 2000). Under the Guidelines, the amount of child support is calculated based on a percentage of the obligor parent's net income. See TENN. COMP. R. & REGS. ch. 1240-2-4-.03 (1994). For two minor children, as in the case at bar, that percentage is thirty-two percent. See id. Since the Guidelines speak in terms of percentages, the trial court is required to determine the obligor's net income before it can set child support. See id.

Applying the Guidelines is straightforward when the obligor's income is stable. It is common for an obligor's income to fluctuate, however, because income may include overtime pay, bonuses, stock options, or other incentive compensation. The Guidelines require that gross income includes all income from any source including variable income such as commissions, bonuses, overtime pay, or dividends. See TENN. COMP. R. & REGS. r. 1240-2-4-.03(3)(a) (1994). If an obligor parent receives overtime pay, as in the case at bar, that variable income "should be averaged and added to the obligor's fixed salary." TENN. COMP. R. & REGS. r. 1240-2-4-.03(3)(b) (1994). The Guidelines do not prescribe how variable income should be averaged for establishing current child support obligations. For past child support obligations, however, the Guidelines do prescribe that income should be averaged over a period of two years. See TENN. COMP. R. & REGS. r. 1240-2-4-.04(e) (1997). Referring to this provision, the court of appeals in Brown v. Brown, No. 03A01-9812-CV-00417, 1999 WL 552854, at *5 (Tenn. Ct. App. July 28, 1999), stated:

> While this provision does not mandate that trial courts average
> variable monthly income from the past two years to determine

> gross income for current child support, it does reflect the legislative
> intent that when the exact amount of gross income is not known
> an average must be taken, and a period of two years is an appropriate
> time period to average that income.

Id.

The courts must determine on a case-by-case basis the most appropriate way to average variable income for current child support. See Hanselman v. Hanselman, No. M1998-00919-COA-R3-CV, 2001 WL 252792, at *3 (Tenn. Ct. App. Mar. 15, 2001). In Tennessee, courts have consistently rejected basing child support obligations on variable income averages of short duration. See id. at *5 (rejecting a proposed several-months average in favor of a three-year average); Miglin v. Miglin, No. 01A01-9802-CH-00080, 1999 WL 398205, at *3 (Tenn. Ct. App. June 18, 1999) (rejecting a proposed four-month average in favor of a one-year average); Whitfield v. Whitfield, No. 03A01-9404-CV-00140, 1994 WL 465796, at *2 (Tenn. Ct. App. Aug. 30, 1994) (rejecting a five-pay-period average in favor of a one-year average). Courts have consistently approved basing child support obligations on variable income averages for periods of a year or longer when warranted by the circumstances. See Alexander v. Alexander, 34 S.W.3d 456, 464-65 (Tenn. Ct. App. 2000) (adopting a four-year average); Norton v. Norton, No. W1999-02176-COA-R3CV, 2000 WL 52819 at *7 (Tenn. Ct. App. Jan. 10, 2000) (adopting a two-year average); Smith v. Smith, No. 01A01-9705-CH-00216, 1997 WL 672646, at *3 (Tenn. Ct. App. Oct. 29, 1997) (adopting a three-year average); Bell v. Bell, No. 01A01-9511-CH-00493, 1996 WL 548150, at *1 (Tenn. Ct. App. Sept. 25, 1996) (adopting a four-year average).

In the case at bar, the trial court ordered Mr. Gore to pay child support to Ms. Gore in the amount of $1,712.00 per month. The trial court stated that it calculated child support based on Mr. Gore's gross average income of $7,676.00 per month for the first seven months of the year 2000. Because Mr. Gore's gross income includes overtime pay, and in accordance with the courts in Tennessee, we find that the trial court erred in averaging Mr. Gore's gross income over a period of only seven months. A two-year average would be a more appropriate period in the case at bar. Accordingly, we reverse the trial court's award of child support in the amount of $1,712.00 per month and remand for a redetermination of child support based on an average of Mr. Gore's overtime pay over the two year period prior to the trial.

**Life Insurance to Secure Child Support Obligation**

The sixth issue presented for our review is whether the trial court erred by requiring Mr. Gore to maintain $150,000.00 in life insurance to secure his child support obligation. Mr. Gore does not dispute that he is required to maintain life insurance to secure his child support obligation. Rather, Mr. Gore argues that the amount of life insurance that the trial court ordered that he maintain is in error. We agree. We reversed the amount of child support Mr. Gore was ordered to pay by the trial

court and remanded for a redetermination of child support in accordance with this opinion. Likewise, we must reverse the amount of life insurance Mr. Gore was ordered to maintain to secure his child support obligation because the trial court based this determination upon the original amount of child support that Mr. Gore was ordered to pay. Accordingly, we remand to the trial court for a redetermination of the amount of life insurance Mr. Gore must maintain to secure his child support obligation based upon the redetermination of child support.

## Restraining Order

The seventh issue presented for our review is whether the trial court erred by permanently enjoining Mr. Gore from taking the children in the presence of Ms. Cannon. On July 19, 2001, Mr. Gore filed a motion in this Court to consider the post judgment fact that he had married Ms. Cannon on June 16, 2001. At oral argument in this case, the attorney for Mr. Gore argued that the marriage had a bearing on whether the restraining order should remain in effect. The attorney for Ms. Gore agreed at oral argument that the children could be in the presence of Ms. Cannon now that Mr. Gore and Ms. Cannon were married. The attorney for Ms. Gore stated that as a result of the marriage, the restraining order was no longer an issue on appeal. Without reaching the merits of the trial court's decision to initially impose the restraining order, we find that the restraining order is no longer appropriate in light of the marriage of Mr. Gore and Ms. Cannon. Accordingly, we vacate the restraining order enjoining Mr. Gore from taking the children in the presence of Ms. Cannon.

## Failure to File a Responsive Pleading

The eighth issue presented for our review is whether Mr. Gore's failure to file a responsive pleading constituted an admission of Ms. Gore's allegations regarding the financial issues. Because we have resolved the financial issues without regard to Mr. Gore's failure to file a responsive pleading, this issue is pretermitted.

## Unclean Hands

The ninth issue presented for our review is whether the trial court properly refused to consider Mr. Gore's proposals as to property division and alimony due to Mr. Gore's "unclean hands." Because we have resolved the property division and alimony issues without regard to whether Mr. Gore had "unclean hands," this issue is pretermitted.

## Attorney's Fees

The final issue presented for our review is whether this Court should award Ms. Gore her attorney's fees on appeal. Ms. Gore argues that she lacks liquid assets to pay her attorney's fees on appeal and will be compelled to dissipate marital assets if this Court fails to award her attorney's fees on appeal. An award of attorney's fees is "appropriate when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses or would be required to deplete his or her resources in

order to pay these expenses." Smith v. Smith, 984 S.W.2d 606, 610 (Tenn. Ct. App. 1997) (citing Brown v. Brown, 913 S.W.2d 163 (Tenn. Ct. App. 1994)). If a wife is financially unable to afford counsel and the husband has the ability to pay, the court may order the husband to pay the attorney's fees of the wife. See Kincaid v. Kincaid, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995). Though one spouse may receive most of the assets in a trial court's division of property, the court may still award attorney's fees to allow that spouse to preserve the assets awarded. See Wilson v. Wilson, 987 S.W.2d 555, 566 (Tenn. Ct. App. 1998) (citing Lancaster v. Lancaster, 671 S.W.2d 501 (Tenn. Ct. App. 1984)). We find that Ms. Gore does not have sufficient liquid assets to pay her attorney's fees on appeal and Mr. Gore has the financial ability to pay Ms. Gore's attorney's fees. Mr. Gore should bear the reasonable fees of Ms. Gore's attorney on appeal. Accordingly, we remand this issue to the trial court to determine and award a reasonable fee for the time and expense of Ms. Gore's attorney on appeal. See Holt v. Holt, 995 S.W.2d 68, 78 (Tenn. 1999).

## IV. Conclusion

For the foregoing reasons, the decision of the trial court is affirmed in part, reversed in part, and vacated in part. We remand this case to the trial court for further proceedings consistent with this opinion. Costs of this appeal are taxed against the Appellant, George D. Gore, and his surety, for which execution may issue if necessary.

ALAN E. HIGHERS, JUDGE