IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 15, 2010 Session

## JANSON POPE v. SAYURI POPE

**Appeal from the Circuit Court for Davidson County**
**No. 07 D 3642      Carol Soloman, Judge**

_____

**No. M2010-00067-COA-R3-CV - Filed October 28, 2010**

_____

In this divorce action, Wife appeals the trial court's division of property and award of alimony and attorney's fees to Husband and asserts that the manner and conduct of the hearing violated her right to procedural due process. We reverse the judgment in part and remand the case for the court to classify the parties' property, to value and divide the property it determines to be marital property, and to redetermine the amount of attorney's fees to Husband.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part and Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Connie Reguli, Brentwood, Tennessee, for the appellant, Sayuri Pope.

Phillip Leon Davidson and Mary Francis Lyle, Nashville, Tennessee, for the appellee, Janson Pope.

**OPINION**

## I.  FACTUAL AND PROCEDURAL HISTORY

Janson Pope ("Husband") and Sayuri Pope ("Wife") were married in May of 1995 in California. At the time of marriage, Husband owned "The Trading Post," a small retail shop that sold and traded used merchandise. Wife began helping with the shop, and eventually the parties began selling items on eBay.com—an online auction website—under the name "The Log Cabin Trading Post." Wife was primarily responsible for listing their products on eBay and managing the online business. In 2002, the parties got the opportunity to sell used or

"old stock"[1] wetsuits on eBay. In 2004, Husband believed that a business contact, Paul Lundgren, intended to make him a partner in his company that sold wetsuits, but an agreement never materialized.[2]

In 2005, the parties sold their home in California and moved to North Carolina, where they continued their eBay business. In September 2007, the parties sold their home in North Carolina and moved to Tennessee. They realized a gain of $279,000.00 on the sale. Soon thereafter, the parties separated, and Husband filed for divorce on December 13, 2007, alleging irreconcilable differences and inappropriate marital conduct. He sought, *inter alia*, an order restraining Wachovia Bank from releasing any funds from Wife's bank accounts, an equitable division of property, and attorney's fees. Prior to the filing of the divorce, the parties had agreed to divide the proceeds of sale of the home into three bank accounts: $100,000.00 in an account in Husband's name, $100,000.00 in an account in Wife's name, and $79,000.00 in a joint account. During the pendency of the divorce, Wife paid off about $30,000.00 in credit card debt from the joint account and deposited half of the remaining funds (about $25,000.00) in each of their separate accounts.

On December 17, the trial court issued an order, restraining and enjoining Wachovia from releasing funds from any account bearing Wife's name. On December 27, Wife filed an answer and a counterclaim—also alleging irreconcilable differences and inappropriate marital conduct—and sought an equitable division of property and attorney's fees. Wife filed a Motion to Dissolve Restraining Order and to Order the Release of Personal Property, alleging that Husband confiscated various items of personal property. On February 25, 2008, the trial court entered an agreed order allowing each party to withdraw $10,000.00 from that party's separate account and ordered Wife to give total control of The Trading Post to Husband.[3]

On November 14, 2008, Husband filed a motion for sanctions, asserting that Wife had failed to adequately respond to discovery requests. Wife filed a Motion for Summary Judgment, seeking a declaration that the business was jointly owned and was part of the

---

[1] "Old stock" refers to wetsuits that were outdated, and the rubber can no longer be warrantied because of its age.

[2] Husband asserted in his pleadings, and continues to assert on appeal, that Wife entered into a secret agreement with Mr. Lundgren and a man named Stefan Larson to sell wetsuits and to cut Husband out of the business.

[3] Wife's employer at the time, Fit2Race, Inc., filed a motion to intervene alleging that Husband had confiscated computers and hard drives owned by Fit2Race. The disposition of that motion is not evident from the record.

marital estate. On December 18, the trial court entered an order requiring Wife to provide a complete and accurate response to Husband's discovery requests or an acceptable explanation as to why she had not complied. At a hearing on January 9, 2009, the court heard Wife's motion for summary judgment and Husband's motion for sanctions. The trial court denied Wife's motion because there were several disputed material facts and ordered her to comply with Husband's discovery requests by January 13. Failure to provide the information, the court wrote, "would result in Wife being barred from taking any position in opposition to Husband's position concerning any issue that was or reasonably could be believed to be contained in that lacking information."

On January 22, 2009, Husband filed a motion in limine for sanctions, contending that Wife resisted orders requiring her to provide relevant documents. He requested that her "pleadings be struck and that she be barred from taking a position contrary to Husband's position that she and a man named Paul Lundgren conspired together to deprive [Husband] of his business, 'The Trading Post.'"

In January 2009, Husband filed a motion to amend his complaint to add a request for alimony and filed a motion for alimony *pendente lite*, asserting that Wife was earning $90,000.00 per year and that he was only earning a few hundred dollars per month. Wife filed a response to Husband's motion for alimony *pendente lite*, contending that she only earned $2,846.20 per month and had expenses of $2,776.00 per month.[4] At a hearing on February 13, the court heard Husband's motion to amend his complaint, motion in limine for sanctions, and motion for *pendente lite* alimony. The court entered an order that granted the motion to amend and granted the motion for sanctions, stating that "Husband's claims regarding any matters covered by discovery that should have been and has not been provided by Wife by February 20, 2009 shall be taken to be established in accordance with Husband's claims, and Wife is forbidden to pursue or oppose any claims and defenses covered by such material." The court denied the motion for *pendente lite* alimony but allowed Husband to withdraw $5,000.00 from his frozen account, reserving for trial the issue of whether those funds should be classified as marital funds to be taken into account in the property division.

On April 14, the trial court held a telephonic conference with the parties' attorneys to discuss Wife's attorney's request for a continuance because he was having health problems. During the discussion, Husband's attorney requested financial assistance for Husband pending the new trial date. On April 27, the court entered an order continuing the trial date and ordering Wife to pay Husband alimony *pendente lite* in the sum of $1,000.00

---

[4] Wife's response actually said that she earned $2,846.20 per *week*, but this was most likely meant to be per month. Wife asserted in later pleadings that this was a typographical error, and her brief on appeal states that it should have read, "per month."

on April 15 and $1,000.00 on May 15. The order stated that the payments were conditioned upon proof at trial of Wife's ability to pay and that, if the condition was not met, the property division would be adjusted to reimburse Wife. On May 22, Wife filed a motion to alter or amend the order for *pendente lite* support, asserting that it was not properly before the court and that no competent evidence was taken on the issue to support the court's conclusion.

On May 28, Husband filed a petition for civil and criminal contempt of court, asserting that Wife had failed to make the May 15 *pendente lite* alimony payment. He also filed a motion in limine contending that Wife failed to comply with discovery requests and asked the court to enforce its February 25 order. On June 11, Wife filed a petition for contempt, alleging that Husband was in willful violation of the statutory restraining order set forth at Tenn. Code Ann. § 36-4-106(d) because he moved marital funds from a joint account to a separate account.[5]

In an order entered on June 22, 2009, the court granted Husband's motion in limine and prohibited Wife from opposing Husband's claim that she "subverted and destroyed Husband's business, The Trading Post." On July 2, the court entered an order which authorized Wachovia to release $2,000.00 to Husband from his separate account and reserved for trial the issue of whether the money would be classified as alimony or as part of the property division.

The trial was held on June 1, June 2, June 22, June 23, and July 14, 2009. In an order entered on December 3, the court found that: 1) despite her testimony that she earned $48,000.00 per year, Wife's annual salary was approximately $90,000.00; 2) Wife was not a credible witness; 3) Wife "secretly dealt" with Paul Lundgren and Stefan Larson to sell wetsuits, while cutting Husband out of The Trading Post; and 4) Husband earned approximately $14,400.00 per year. The court then: 1) granted Husband a divorce on the grounds of inappropriate marital conduct; 2) ordered Wife to pay Husband transitional alimony of $1,500.00 per month for 3 years; 3) awarded Husband $150,000.00 from two Wachovia bank accounts, which the court held to be marital funds; 4) awarded Husband his attorney's fees of $49,000.00 as alimony *in solido*; 5) ordered Wife to pay court costs and discretionary fees; 6) characterized the $2,000 *pendente lite* alimony and the $7,000.00 the court allowed Husband to withdraw from the marital funds as alimony *in solido*; 7) awarded each party the remaining bank accounts that were in each party's sole name; 8) awarded husband a 1999 Dodge Ram Camper Van and a 1999 Ford F-800; 9) awarded wife a 1999 GMC Safari Van and a 2008 Subaru Legacy; 10) awarded each party the business and personal property then in their possession; 11) awarded Wife jewelry, which was to remain in Husband's possession until her alimony obligations were paid in full; 12) awarded

---

[5] The disposition of the petitions for contempt is not evident in the record.

Husband the business names of "Say's Boutique," "Sales Boutique," and "The Trading Post"; 13) ordered each party to pay all debts in that party's sole name; and 14) ordered Wife to pay any debt owed on a Chase Capital account opened by Wife in Husband's name.[6]

On December 30, Wife filed a Notice of Appeal and a motion to stay judgment under Tenn. R. Civ. P. 62. Various other post-trial motions were filed, including a motion filed by Wife on February 2, 2010, seeking to supplement the record with "the Court's judicial comments regarding the Husband."[7]

On February 23, the court entered an order 1) granting Husband's motion to withdraw funds in the amount of $15,000.00; 2) granting Husband's attorney's motion to secure attorney's fees "which the Court f[ound] be to in the amount of $67,402.53"; 3) granting Wife's motion to stay the judgment, except for the $15,000.00 Husband was permitted to withdraw and with regard to Wife's obligation to pay transitional alimony; and 4) denying Wife's motion to supplement the record.

## II. DISCUSSION

On appeal, Wife contends that the trial court erred in failing to classify, value, or equitably divide the parties' property; in awarding alimony and attorney's fees to Husband; and in the manner and conduct of the hearing, including the finding that she "subverted and destroyed" Husband's business. Wife further asserts that the trial court committed plain error and violated her right to procedural due process. We will consider each issue separately.

## A. Distribution of Marital Property

### 1. *Classification of Marital Property*

The court held that the two Wachovia bank accounts and the business name of The Trading Post were marital property.[8] The court did not classify the business names "Say's

---

[6] Wife does not specifically challenge the court's division of the debts.

[7] Wife's attorney attached an affidavit to this motion stating that, during a meeting in chambers on the final day of the hearing, the trial court stated that "she though[t] the Husband was just 'dumb' or very 'naive' and the Judge didn't think [Wife's attorney] would get any answers from him."

[8] The court made no determination of value of the business name but found that the business had no value.

Boutique," "Sales Boutique,"[9] other bank accounts, four vehicles, and the personal property and business inventory awarded to each party. The provision in the decree relative to Wife's separate property stated that Wife was "awarded her separate property including, but not limited to jewelry consisting of two wedding rings and a one karat diamond pendant." The court, however, did not state what property, other than the jewelry, was considered separate.

The division of the marital estate begins with the classification of property as separate or marital. *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001). Questions concerning the classification of property as either marital or separate are inherently factual. *Owens v. Owens*, 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007). We review the trial court's findings of fact *de novo*, presuming that the trial court's factual determinations are correct unless the preponderance of evidence is otherwise. Tenn. R. App. P. 13(d); *see also Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). If the evidence does not preponderate against the court's findings, we must affirm, absent an error of law. Tenn. R. App. P. 13(d).

The trial court determined the funds in the Wachovia accounts were marital property. The proof was that the funds were proceeds from the sale of the parties' North Carolina home. Inasmuch as the accounts were proceeds from the sale of the marital residence, the court did not err by classifying the bank accounts as marital property. *See* Tenn. Code Ann. § 36-4-121(b)(1)(a).

Similarly, the preponderance of the evidence supports the classification of "The Trading Post" as marital property. Husband owned the business at the beginning of the marriage and, in 1998, he sold the business. Over the course of their marriage Husband and Wife operated a similar business, through eBay.com, first known as "The Log Cabin Trading Post" and later known as "The Trading Post." The proof was that both parties contributed significantly to its success. The classification of the business name as marital property was not error.

Testimony by both Husband and Wife was that the rings and diamond pendant were given to Wife as gifts during the course of the parties' engagement and marriage; these were awarded to Wife as separate property. Because separate property includes "[p]roperty acquired by a spouse at any time by gift," the court did not err in classifying the jewelry as separate property. Tenn. Code Ann. § 36-4-121(b)(2)(D); *see also Batson v. Batson*, 769 S.W.2d 849 (Tenn. Ct. App. 1988).

---

[9] Wife testified that Say's Boutique and Sales Boutique were internet businesses which were properties of The Trading Post and operated using The Trading Post website and PayPal account.

The court did not classify the remaining property, consisting of four vehicles, business inventory and personal property, bank accounts, and the business names of Say's Boutique and Sales Boutique. As noted, it is the court's responsibility to classify all property as part of the equitable division; the failure to do so is error.

## 2. *Valuation of Marital Property*

Once the court has classified the property, the court must place a reasonable value on marital property that is subject to division. *Edmisten v. Edmisten*, No. M2001-00081-COA-R3-CV, 2003 WL 21077990, at *11 (Tenn. Ct. App. May 13, 2003). The value of marital property is a fact question, and a trial court's decision with regard to the value of a marital asset will be given great weight on appeal. *Edwards v. Edwards*, 501 S.W.2d 283, 288 (Tenn. Ct. App. 1973). In accordance with Tenn. R. App. P. 13(d), the trial court's decisions with regard to the valuation and distribution of marital property will be presumed to be correct unless the evidence preponderates otherwise. *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1998); *see also Hardin v. Hardin*, 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983).

The only value assigned to marital property was $150,000.00 for the Wachovia accounts; the court found that The Trading Post business had no value. No value was placed on the parties' vehicles, business inventory, personal property, various debts owed by the parties, other bank accounts, or the business names of Say's Boutique, The Trading Post and Sales Boutique.

The parties testified that the value of The Trading Post derived almost entirely from its sales inventory, and that the business name itself was of little or no value. Husband testified that he did not know how to use eBay and was unable to run the online business until he learned to do so. There was also testimony that The Trading Post business suffered a loss in value after the parties' separation. Although there was business inventory as of the date of trial, the court's valuation of the Trading Post was, apparently, based on the name only. Because the inventory was not considered in the valuation of the business, there is no evidence to support the court's finding that the business had no value and the case must be remanded for the court to set a value on the inventory and any other property owned by the business, *e.g.*, computers.[10]

---

[10] The Court awarded each party the "business inventory" in their possession. While Wife does not contest this award, it is necessary for the court to classify the inventory as marital property and assign a value to the inventory in order to equitably divide the marital assets.

Tenn. Code Ann. § 36-4-121(b)(1)(A) requires that "[a]ll marital property . . . be valued as of a date as near as possible to the date of entry of the order finally dividing the marital property." Wife testified that the total amount held by the parties in all Wachovia accounts at the date of separation was $260,328.72; the bank statements introduced at trial were consistent with Wife's testimony. However, the Wachovia bank statements in the record end at July 2008 and there is no evidence of the value of the accounts as of the date of the final hearing of the divorce in July 2009. The record does not show upon what basis the court awarded Husband $150,000.00 from the Wachovia accounts and the balance in the accounts after the award.[11] As with the businesses and business inventory, the correct valuation of these accounts is a matter which must be addressed by the court on remand.[12]

### 3. Division of Marital Property

Tenn. Code Ann. § 36-4-121(c)(1) requires a court to equitably divide marital property, but an equitable division does not require that the property be divided equally. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002). As with classification and valuation, trial courts have "wide latitude in fashioning an equitable division of marital property," and their decisions will be given great weight by the court of appeals. *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996). The court of appeals will not overturn a trial court's division of marital property in absence of evidence that the distribution "lacks proper evidentiary support or results from some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996) (citing *Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. Ct. App. 1994)).

In light of the court's failure to classify and assign values to all marital property, there is insufficient evidence to support the division of marital property.

## B. Alimony and Attorneys Fees

The court awarded Husband transitional alimony of $1,500 per month for three years. It also awarded, as alimony *in solido*, the $2,000 *pendente lite* alimony, the $7,000 Husband was allowed to withdraw during the pendency of the proceedings, and Husband's attorney's

---

[11] While Wife contends that the court "failed to award $44,000 in the property division," she fails to identify the source of these funds.

[12] Wife complains that the trial court failed to address her contention that Husband dissipated $45,000 from his account between December 2007 and January 2008. On remand, the court should determine if Husband or Wife dissipated any of the funds between the date of separation and the final divorce hearing before allocating the funds between the parties. *See generally Ward v. Ward*, No. W2001-01078-COA-R3-CV, 2002 WL 31845229, at *2–3 (Tenn. Ct. App. Dec. 19, 2002).

fees. Wife contends that the court erred in finding that she had the ability to pay and that Husband was economically disadvantaged. Wife contends that the $7,000 should have been deemed marital property rather than alimony *in solido*. Lastly, Wife argues that the court abused its discretion by awarding Husband his attorney's fees as alimony *in solido*.

*1. Wife's Ability to Pay & Husband's Need*

When setting alimony, a court must look to the factors set forth in Tenn. Code Ann. § 36-5-121(i). A trial court should consider all the relevant factors under the circumstances, but the two most important factors are 1) the need of the economically disadvantaged spouse and 2) the obligor spouse's ability to pay. *Riggs v. Riggs*, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007) (citing *Robertson v. Robertson,* 76 S.W.3d 337, 342 (Tenn. 2002)); *see also Bogan v. Bogan*, 60 S.W.3d 721, 730 (Tenn. 2001); *Oakes v. Oakes*, 235 S.W.3d 152, 160 (Tenn. Ct. App. 2007). When considering these two factors, the primary consideration is the disadvantaged spouse's need. *Riggs*, 250 S.W.3d at 457 (citing *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995); *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999)).

At the time of trial , Wife was employed as Director of Operations for Fit2Race, Inc. She testified that her only source of income was from this employment and that her gross yearly salary was $48,000. She submitted a paycheck from April 2009 that showed her two-week gross earnings were $1,846.15; by extrapolation, her gross income from Fit2Race for the year would have been $47,999.90. Her employer, Mr. Lundgren, testified that Wife's salary was $48,000 per year.

The record, however, includes a signed credit application from 2008 in which Wife stated her monthly income as $7,500. Further, Wife admitted that her tax returns for both 2007 and 2008 did not accurately state her full income. When asked about her 2007 return, which showed an adjusted gross income of $2,743, Wife testified that she had reported no income while claiming expenses from The Trading Post; she testified further that she was planning to amend the return. Her 2008 tax return indicated that Fit2Race was her only employer and that her total salary was $44,861.44. She testified, however, that she also made money through her eBay business, Say's Boutique, that she did not report on her return.[13] In holding that Wife made over $90,000 a year in 2009, the court stated that Wife's credibility issues and inconsistent statements made it impossible to believe that Fit2Race was her only source of income. The court held that her spending habits and bank account total were more in line with an income of $90,000 per year.

---

[13] Wife's bank statements for 2008 confirm numerous and substantial deposits other than from Fit2Race.

With regard to Husband's financial need, the record is fairly straightforward. Before trial, he filed a statement of income and expenses, in which he stated his gross monthly income to be as $1022 and monthly expenses of $3,221.75.[14] He testified that he operated an antique booth at Green Hills Antique Mall and worked two days a week through a temp agency at $7.59 an hour. Wife did not present proof demonstrating the inaccuracy of these figures, and on appeal she merely asserts that Husband "had done little to nothing to support himself."

The evidence does not preponderate against the trial court's findings of Wife's and Husband's income, Wife's ability to pay, and Husband's need.[15] The income disparity demonstrates Husband's financial disadvantage, thereby justifying the award of transitional alimony to Husband.

## 2. *Award of Alimony In Solido*

The amount and type of alimony to be awarded is within the sound discretion of the trial court in light of the particular circumstances of each case. *Riggs*, 250 S.W.3d at 456–57 (citing *Lindsey v. Lindsey*, 976 S.W.2d 175, 180 (Tenn. Ct. App. 1997)). This Court will not alter such awards absent an abuse of discretion. *Id*. Moreover, we are disinclined to second-guess a trial court's decision regarding spousal support unless it is not supported by the evidence or is contrary to public policy. *Brown v. Brown*, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994).

Wife challenges the court's classification of the $7,000 withdrawn by husband as alimony *in solido*. Her brief states, "The Wife would show that this disbursements [sic] should have been deemed property division," but she cites to no authority and presents no analysis to support her position. Our review of the record does not show that the court abused its discretion in awarding Husband the $7,000 as alimony *in solido*.

## 3. *Attorney's Fees*

The trial court awarded Husband $49,000 for his attorney's fees as alimony *in solido*. Relying on *Inman v. Inman*, 811 S.W.2d 870 (Tenn. 1991), Wife contends that an award of

---

[14] The income and expense statement in the record was modified consistent with Husband's trial testimony to show total monthly expenses of $2,861.75.

[15] At trial, Husband testified that, since the date of filing the income statement, his income increased "a couple hundred dollars with the second-hand season heating up a little bit." This likely accounted for the trial court's finding that he made $14,400 per year.

attorney's fees are inappropriate when the spouse seeking the award is able to pay his or her own lawyer from earnings or assets received in the divorce and, consequently, she argues the award should be reversed. Wife acknowledges that the question of whether to award attorney's fees, and the amount thereof, are largely left to the discretion of the trial court. *See Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995). The trial court's decision will not be disturbed on appeal absent an abuse of discretion. *Id.*

Wife's reliance on *Inman* is misplaced. The Supreme Court's holding in that case was based on the analysis of the particular facts at issue, with circumstances quite different from the case at hand. In *Inman*, the wife was awarded more than $1 million dollars in marital assets and was found to have a "substantial earning capacity." Because of that, the Court found the award of attorney's fees and alimony were "neither necessary nor appropriate." *Inman*, 811 S.W.2d at 874. To the contrary, in making the award in this case, the court had already determined Husband's need for alimony. In addition, the court noted that Wife refused to provide discovery "so many times" and escalated the fees incurred by Husband.[16] The trial court did not abuse its discretion in determining to award attorney's fees to Husband.

We deem it appropriate, however, to vacate the amount of fees awarded. Provisions with regard to marital property are among the factors to be considered in determining the amount of alimony to be awarded. *See* Tenn. Code Ann. § 36-5-121(i). In light of our remand of this case, the amount of the attorneys' fees awarded should be reexamined following the court's division of the marital property.

## C. The Manner and Conduct of the Hearing

Appellant raises as an issue whether the trial court erred "in its manner and conduct of the hearing including the finding that Wife 'subverted and destroyed his business' and allowing him to proceed on his request for alimony." She mentions the court's June 2009 order imposing a sanction and the court's action in allowing Husband to proceed with a request for alimony, and asserts that the court abused its discretion as to each.

The June 2009 order, in which the court forbade Wife from opposing Husband's claim that Wife subverted and destroyed The Trading Post business, was premised on an order

---

[16] The court had ordered Wife to turn over documents related to The Trading Post business. When Wife later admitted that she did not provide an electronic drive containing emails related to The Trading Post business, the court granted non-monetary sanctions against Wife for her failure to comply with discovery. The court found that Wife "deliberately held back on crucial discovery of accounts, of computer passwords, of programs and the contents of a lock box . . . ."

entered February 25, 2009 on a motion filed by Husband seeking sanctions for Wife's failure to provide documents and materials sought in discovery. In his motion, Husband recounted the history of his efforts to secure discovery from Wife, which began on January 25, 2008 and included the entry of an agreed order entered September 3, 2008, resolving a pending motion to compel filed by Husband. Following a hearing on November 21 a further order was entered on December 18, 2008, wherein the court ordered Wife to "provide a complete and accurate response to all requests contained in Exhibit G to Husband's Motion [for Sanctions], or an acceptable explanation as to why any such request has not been complied with fully, by this Court's motion docket on December 19, 2008." Wife does not dispute that she failed to provide the information and instead takes issue with the fact that the second order "granted relief not so identified in the first order," which she argues "was of a general nature."

Tenn. R. Civ. P. 37.02(B) allows a court to impose "an order refusing to allow the disobedient party to support or oppose designated claims or defenses" as a sanction for failure to comply with prior orders. The February order stated specifically that Husband's claims regarding matters which were covered by discovery that could and should have been provided would be taken as established, and Wife would be forbidden to oppose such claims related to discovery that she failed to provide. In the event that Wife failed to comply with discovery, the court's authority and discretion to impose a sanction authorized by Rule 37 and appropriate for the particulars of the case was not limited simply because the court did not lay out all possible sanctions in its February 25 order. Further, to the extent Wife contends that the court's February 25 order was in any way confusing or inadequate, the record shows neither compliance on the part of Wife with any aspect of the order nor an effort by Wife to clear up any confusion. The court did not abuse its discretion in sanctioning Wife.

Wife also complains that Husband did not plead for alimony in his original complaint. Wife claims that, after Husband was granted leave by the court to amend his complaint, he did not refile or serve the amended complaint on her and, therefore, the trial court's award of alimony was an abuse of discretion. She cites no authority for this argument and, to the extent it might be a factor to be considered, no prejudice by the allowance of the amendment.

Tenn. R. Civ. P. 15 allows for the amendment of pleadings upon leave of court; the rule further provides that "leave shall be freely given when justice so requires." In *Branch v., Warren*, 527 S.W.2d 89, 91–92 (1975), the Tennessee Supreme Court stated: "That rule needs no construction; it means precisely what it says, that 'leave shall be freely given.'" Wife has failed to show that the court abused its discretion.

**D. Wife's Right to Procedural Due Process in the Conduct of the Hearing**

Wife contends that she was deprived of a fair trial. At various times, the court referred to Wife as "a bad woman" and "an alley cat." The court also stated "I don't think [Wife is] dumb. I'm almost convinced of it," and "[Wife] bores me." Wife argues that the court 's "impertinent and biased remarks" amounted to plain error and violated her right to procedural due process. Wife, however, did not move the court to recuse itself, and there is no order or record developed on such a motion for us to review.

We agree that the court's remarks about Wife are impertinent and are concerned that the remarks negatively affect the parties' perceptions of the impartiality of the court. The record does not show, however, that the court was biased against Wife. The court determined that Wife was not credible and that determination is supported by the evidence.[17] The record does not show that Wife's rights to a fair hearing or to due process of law were violated. On remand, we anticipate that the court will conduct further proceedings and resolve the remaining issues in a manner that will instill confidence in both parties that the case has been determined in a fair and impartial manner.

**III. CONCLUSION**

For the aforementioned reasons, this Court AFFIRMS the court's findings that the Wachovia bank accounts were marital property; that "The Trading Post" business name was marital property; that Wife's wedding rings and diamond pendant were separate property; the awards of transitional and *in solido* alimony; and the court's decision to award attorney's fees to Husband. In all other respects the judgment is REVERSED and the case REMANDED for the trial court: to classify the property of the parties; to value the property it determines to be marital property, including The Trading Post business and the Wachovia bank accounts; and to equitably divide the marital property. The court is further directed to reconsider the amount of attorney's fees to be awarded Husband in accordance with this opinion.

_____
RICHARD H. DINKINS, JUDGE

---

[17] In addition to the matters related to Wife's failure to comply with discovery orders, the court made a finding that Wife had lied at her deposition and had failed to include all income on her income and expense statement. Wife does not dispute these findings.